THE COUNTY OF COOK, Plaintiff-Appellee, *v.* WORLD WIDE NEWS AGENCY *et al.*, Defendants-Appellants.—(THE VILLAGE OF NILES, Intervening Plaintiff-Appellee.)

First District (3rd Division)    No. 80-1356

Opinion filed June 24, 1981.—Rehearing denied August 14, 1981.

Patrick A. Tuite, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Paul P. Biebel, Jr., Morris Alexander, and James F. Henry, Assistant State's Attorneys, of counsel), for appellee County of Cook.

Sneider & Troy, of Chicago, for appellee Village of Niles.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:
The defendants are the operators of World Wide News Agency (World Wide), a bookstore located at 9570 Potter Road, Des Plaines, in unincorporated Cook County. On May 2, 1980, the circuit court of Cook County permanently enjoined the operation of the adult sections of World Wide until the defendants complied with certain provisions of the Cook

County Zoning Ordinance. On appeal, the defendants contend that the zoning ordinance is unconstitutional.

Pursuant to the Cook County Zoning Ordinance, as amended, adult book stores,[1] adult motion pictures,[2] and adult mini-motion-picture theaters[3] must be located in areas zoned C-3. These adult uses are special uses which require the issuance of a special use permit. Section 5.34.

In order to obtain the permit, an applicant must file an application with the Department of Building and Zoning. (Section 13.10—3.) Thereafter, the Zoning Board of Appeals conducts a public hearing in the township in which the property is located. (Section 13.10—4.) The Zoning Board of Appeals reports its finding and recommendation to the Board of Commissioners of Cook County. (Section 13.10—5.) The Zoning Board of Appeals cannot recommend a special use unless it finds:

"1. That the establishment, maintenance, or operation of the special use will not be detrimental to or endanger the public health, safety, or general welfare.

2. That the special use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood.

3. That the establishment of the special use will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district.

4. That adequate utilities, access roads, drainage and/or other necessary facilities have been or are being provided.

5. That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets.

6. That the special use shall in all other respects conform to the applicable regulations of this Ordinance and other applicable County regulations, except as such regulations may in each instance be modified by the Board of Commissioners pursuant to the

---

[1] "An establishment having as a substantial or significant portion of its stock in trade, books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas,' or an establishment with a segment or section devoted to the sale or display of such material." Section 14.2.

[2] "An enclosed building with a capacity of 50 or more persons used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas,' for observation by patrons therein." Section 14.2.

[3] "An enclosed building with a capacity for less than 50 persons used for presenting materials distinguished or characterized by an emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas' for observation by patrons therein." Section 14.2.

recommendation of the Zoning Board of Appeals." Section 13.10—7.

The County Board of Commissioners may grant or deny the application for a special use. (Section 13.10—5.) However, in the event of a written protest against the proposed use, approval of the special use requires a favorable vote of three-quarters of the members of the County Board. Section 13.10—5.

The ordinance also provides that it is unlawful to establish an adult book store, adult motion picture theater, adult mini-motion-picture theater or adult entertainment cabaret within 1,000 feet of an area zoned for residential use. This prohibition may be waived if the applicant files with the Zoning Board of Appeals a petition indicating the approval of the proposed use by 60% of the persons owning, residing or doing business within a radius of 1,000 feet of the location of the proposed use (neighbors). (Section 13.6—4.) Nicholas Phillips, the Secretary of the Zoning Board of Appeals, testified that there are approximately 40 to 45 C-3 zones in unincorported Cook County. All but three of these zones are within 1,000 feet of an area zoned residential.

World Wide opened for business in mid-1979. Its location is within 1,000 feet of an area zoned residential. The store contains an area devoted to the sale of sexually explicit books and magazines. Also located in the store are individual "toilet-type" stalls in which adults can view sexually explicit films.

The County brought this action to enjoin the operation of the adult sections of World Wide because the defendants had neither obtained a special use permit nor secured a waiver from 60% of the neighbors.[4] The defendants filed a motion to dismiss the action alleging that the ordinance unconstitutionally imposed a prior restraint on the sale and dissemination of materials protected by the first amendment. The trial court denied the motion to dismiss and subsequently entered the permanent injunction.

■■ Before we consider the defendants' argument concerning the constitutionality of the ordinance, we must first address the County's claim that the defendants did not exhaust their administrative remedies. The County points out that the defendants never attempted to comply with the ordinance and cites *Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 383 N.E.2d 964, and *Bright v. City of Evanston* (1956), 10 Ill. 2d 178, 139 N.E.2d 270, for the proposition that a party cannot challenge the constitutionality of a zoning ordinance until he has first exhausted his administrative remedies.

In both *Northwestern* and *Bright*, the property owners brought declaratory judgment actions challenging the validity of the ordinances.

---

[4] The Village of Niles intervened in this action and joined with the County in its motion for an injunction.

In the instant case, the property owners are defending an action brought by the county. In *County of Lake v. MacNeal* (1962), 24 Ill. 2d 253, 260, 181 N.E.2d 85, our supreme court held that:

> "So long as local authorities institute an action, a defendant should be entitled to defend on the ground of the invalidity of the ordinance and to have the issue determined. If it were to be otherwise, the result could be that judicial machinery would be used to enforce an ordinance that is unconstitutional."

Thus, the defendants in the case at bar were entitled to challenge the constitutionality of the Cook County Zoning Ordinance. See also *City of Des Plaines v. La Salle National Bank* (1976), 44 Ill. App. 3d 815, 358 N.E.2d 1198.

The defendants contend that the zoning ordinance, which requires that all operators of adult book stores obtain special use permits and in most instances the permission of 60% of the neighbors, operates as a prior restraint on the sale of constitutionally protected materials.

The question of whether the content of speech may be a valid classification for zoning was decided by the United States Supreme Court in *Young v. American Mini Theatres, Inc.* (1976), 427 U.S. 50, 49 L. Ed. 2d 310, 96 S. Ct. 2440. *Young* involved Detroit's zoning ordinance, which provided that an adult theater or adult bookstore may not be located within 1,000 feet of any two other regulated uses.[5] The ordinance was adopted in response to the opinion of urban planners and real estate experts that the location of several adult uses in the same neighborhood tended to attract an undesirable quantity and quality of transients, adversely affected property values, caused an increase in crime, especially prostitution, and encouraged residents and businesses to move elsewhere.

The Supreme Court held that the ordinance did not operate as a prior restraint on free speech since the market for the adult materials in Detroit was essentially unrestrained. The plurality opinion of Justice Stevens stated that the content of speech may be a valid classification for zoning purposes if the classification serves a valid state interest and does not impermissibly suppress protected speech. Justice Stevens concluded that Detroit's interest in preserving the present and future character of its neighborhoods adequately supported its classification of motion pictures which only limited the place at which adult films may be exhibited.

In his concurring opinion in *Young*, Justice Powell analyzed the ordinance under the four-part test set forth in *United States v. O'Brien*

---

[5] Other regulated uses included cabarets, establishments for the sale of beer or intoxicating liquor for consumption on the premises, hotels or motels, pawnshops, pool or billiard halls, public lodging houses, secondhand stores, shoeshine parlors and taxi dance halls. *Young*, 427 U.S. 50, 52 n. 3, 49 L. Ed. 2d 310, 316 n.3, 96 S. Ct. 2440, 2444 n.3.

(1968), 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673. Under that test, a governmental regulation is sufficiently justified despite its incidental impact upon first amendment interests, (1) if the regulation is within the constitutional power of the government, (2) if it furthers an important or substantial government interest, (3) if the governmental interest is unrelated to the suppression of free expression; and (4) if the incidental restriction on first amendment freedoms is not greater than is essential to the furtherance of that interest. Justice Powell concluded that the ordinance satisfied these requirements.

In *Genusa v. City of Peoria* (7th Cir. 1980), 619 F.2d 1203, the Seventh Circuit Court of Appeals relied on Justice Powell's concurring opinion in *Young*. The court applied *O'Brien's* four-part test in its analysis of ordinances having an incidental impact upon first amendment interests.

Subsequently, in *Entertainment Concepts, Inc., III v. Maciejewski* (7th Cir. 1980), 631 F.2d 497, *cert. denied* (1981), ___ U.S. ___, 67 L. Ed. 2d 346, 101 S. Ct. 1366, the court reviewed a zoning ordinance of the village of Westmont which provided that indoor adult movie theaters were special uses requiring the prior authorization of the Village Board of Trustees. The plaintiff, a theater operator, alleged that the ordinance was an impermissible classification of speech based on content and a prior restraint of protected communication. The court noted that the village offered no legitimate governmental interest to support the ordinance, and concluded that the special use requirement was a prior restraint on speech. The court commented that "we doubt that any special use scheme for regulation of adult movie theaters would be constitutionally valid because of the prior restraint involved." The court also stated that assuming that the ordinance could be viewed as a means to regulate only the location of adult uses, the special use scheme failed the fourth test of *O'Brien* that an incidental restriction be no greater than is essential to further the governmental interest. The court held that:

> "Although the Village contends that the ordinance does not flatly prohibit adult movie theatres, the Westmont officials possess unbridled discretion to grant or deny a special use permit. In addition, the ordinance proscribes no time period at all for decisions. Instead of merely regulating location, the ordinance thus grants the Village officials power to prohibit the operation of any adult movie theatre." 631 F.2d 497, 505.

Applying the analysis employed in *Entertainment Concepts* to the instant case, we note that the Cook County Zoning Ordinance serves a valid governmental interest. The ordinance provides:

> "In the development and execution of this Ordinance, it is recognized that there are some uses which, because of their very nature,

are recognized as having serious objectionable operational charac-
teristics, particularly when several of them are concentrated under
certain circumstances thereby having a deleterious effect upon the
adjacent areas. Special regulation of these uses is necessary to
insure that these adverse effects will not contribute to the blighting
or downgrading of the surrounding neighborhood * * *. The
primary control or regulation is for the purpose of preventing a
concentration of these uses in any one area. To provent such uses
from having an adverse effect upon the adjacent areas, not more
than two such uses shall be established within one thousand feet of
each other." (Section 13.16—1.)

Like the Detroit ordinance reviewed in *Young*, the Cook County ordi-
nance is aimed at preventing the proliferation of adult uses in one area.

However, the special use requirement obviously imposes restrictions
on first amendment freedoms. Such restrictions are permissible only so
long as they are of no greater than necessary to further the County's
interest. We cannot say that the ordinance in the instant case satisfies this
requirement.

■■ Cook County's ordinance requires that every operator of an adult
bookstore obtain a special use permit from the County Board regardless
of the store's proximity to another regulated use. Such a regulation is far
greater than necessary to prevent the proliferation of adult uses in one
area. Furthermore, like the village officials in *Entertainment Concepts*,
the County Board has the unbridled discretion to grant or deny the
permit. If the Board so desires, it can reject every applicant for a special
use. Such a requirement operates as a prior restraint on speech.

■■ A second restriction imposed by the ordinance is its prohibition of the
establishment of an adult use within 1,000 feet of an area zoned for
residential use, absent a waiver of the neighbors. Although this restriction
alone seems reasonable, the ordinance also requires that all adult uses be
located in areas zoned C-3 when, in fact, all but three of the C-3 zones in
unincorporated Cook County are within 1,000 feet of an area zoned
residential. Thus, with minor exception, the residents in unincorporated
Cook County possess the unbridled discretion to determine whether an
adult bookstore can exist in the area. Such a zoning scheme also operates
as a prior restraint.

The county argues that its ordinance is similar to the ordinance of
Detroit which was upheld in *Young*. We first note that Detroit's ordinance
did not require a special use permit for every adult use. In addition, the
only section of Detroit's ordinance reviewed by the Supreme Court was
the requirement that an adult use may not be located within 1,000 feet of
any two other regulated uses. Furthermore, the court in *Young* specif-
ically commented that:

"The situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech. Here, however, the District Court specifically found that '[t]he Ordinances do not affect the operation of existing establishments but only the location of new ones. There are myriad locations in the City of Detroit which must be over 1000 feet from existing regulated establishments. This burden on First Amendment rights is slight.' [Citation.]" (427 U.S. 50, 71-72 n.35, 49 L. Ed. 2d 310, 327 n.35, 96 S. Ct. 2440, 2453 n.35.)

(See also *Schad v. Borough of Mount Ephraim* (1981), 49 U.S.L.W. 4597, 4601.) In the instant case the burden on first amendment rights is significant.

In summary, various sections of the Cook County Zoning Ordinance require the following: (1) that all operators of certain adult uses (adult bookstore, adult motion picture theater, adult mini-motion-picture theater) must obtain special use permits; (2) that these uses must be located in areas zoned C-3 (all but three of which are within 1,000 feet of areas zoned residential); and (3) that the operators must obtain a waiver of 60% of the persons owning, residing or doing business within a radius of 1,000 feet of the location of the proposed use if it is within 1,000 feet of an area zoned residential. Such a zoning scheme operates as a prior restraint on speech and is therefore unconstitutional.

For this reason, the order permanently enjoining the operation of the adult sections of World Wide is hereby reversed.

Reversed.

McNAMARA and WHITE, JJ., concur.