·NORTH STREET BOOK SHOPPE, INC., Plaintiff,

v.

The VILLAGE OF ENDICOTT, New York; Marion Corino, Individually and as Mayor of the Village of Endicott, New York; Paul J. Ripic, Individually and as Code Enforcement Officer of the Village of Endicott, New York; E.A. Kudgus, Individually and as Superintendent of Public Works of the Village of Endicott, New York; and Mary Jane Sedlack, Village Clerk of the Village of Endicott, New York, Jointly and Severally, Defendants.

No. 83–CV–1548.

United States District Court, N.D. New York.

March 27, 1984.

Ziff Weiermiller Learned & Hayden, Elmira, N.Y., Thomas E. Reilly, Elmira, N.Y., of counsel.

Joseph L. Nestor, Endicott, N.Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

The plaintiff North Street Book Shoppe, Inc., operator of an "adult bookstore" at 17 Washington Avenue in the Village of Endicott, New York, commenced this action for a judgment declaring sections 20–220 through 20–225 of the Zoning Code of the Village of Endicott to be invalid as repugnant to the first and fourteenth amendments; for injunctive relief; for damages; and for costs. The jurisdiction of this court was properly invoked pursuant to 28 U.S.C. §§ 1343(3) (civil rights) and 2201 (declaratory judgments). Presently before the court is plaintiff's motion for a preliminary injunction prohibiting enforcement of the challenged ordinance pending a final determination herein. A hearing was conducted on December 2, 1983, and post-hearing briefs were submitted to the court.[1] This Memorandum-Decision contains the court's findings of fact and conclusions of law pertaining to the instant motion.

### I.

In June of 1982, residents of Endicott learned that an adult bookstore would open at 17 Washington Avenue, a prime commercial location in the Village of Endicott. On June 14, prior to the opening of the bookstore, several residents voiced their disapproval and opposition to the bookstore at a regular meeting of the Village Board of Trustees, and urged the Board to take action. The objections expressed stemmed both from moral grounds and from concerns that the bookstore would cause a deterioration of the character of the neighborhood and a decline in property values.

The adult bookstore, "Mr. Bill's", opened sometime between June 14 and the Board's next public hearing on the matter on June 28. At that hearing, residents again expressed their fervent opposition to the store, and demanded action. The Board then read a proposed local law which would amend the Zoning Code of the Village of Endicott by the addition of provisions defining and restricting the location of "adult entertainment" businesses in the Village.

A public hearing on the proposed local law was conducted on July 26, 1982. At the conclusion of the hearing the measure, Local Law # 17, was adopted by a unanimous vote of the Board. It appears in the Village Code in Chapter 20—"Zoning", Article IV, Division 5, sections 20–220 through 20–224.

The operative section of the ordinance, § 20–222, provides that:

No person shall cause or permit the establishment of any of the following "adult entertainment" businesses, as defined in Section 20–221 hereof, within 500 feet of any building containing residential dwelling or rooming units, or within 1,000 feet of any church, school, park, playground, amusement arcade or existing "adult entertainment" businesses: adult bookstore, adult mini motion picture theater, adult motion picture arcade, adult motion picture theater.

The "establishment" of an "adult entertainment" business shall include the opening of such business as a new business, the relocation of such business, or the conversion of an existing business location to any of the uses described in Section 20–221 B. hereof.

The ordinance defines the relevant terms, § 20–221, and the method of measuring distances, § 20–223. It also contains a purpose clause, § 20–220, and a severability clause, § 20–224.

At the time of the enactment of the ordinance, "Mr. Bill's" was the only adult entertainment business operating in Endicott. Since the ordinance only applied to the opening, relocation, or conversion of an adult entertainment business, it placed no

---

1. Without requesting leave by the court, a group styled "Citizens for a Decent Community" filed a "Brief Amicus Curiae" shortly after the hearing on the preliminary injunction motion was conducted. Although the court does not condone the practice of filing an amicus brief without leave, it has considered the legal arguments made therein. It has not, however, considered the group's factual presentation.

immediate restraint upon the operation of that bookstore.

On October 25, 1982, the Village of Endicott enacted an amendment to the ordinance that provides:

Any non-conforming use of a building or structure for any adult entertainment business lawfully existing at the time of this amendment may be continued until October 31, 1983, at which time such use shall be discontinued. . . .

This one year amortization provision is codified as § 20–225 of the Zoning Law.

According to the complaint, in December of 1982 the owner of Mr. Bill's sold its business and lease to the plaintiff North Street Book Shoppe, Inc., a corporation existing under the laws of New York. Plaintiff had previously operated an adult book store at 1506 North Street in Endicott from 1976 through July of 1982, at which time it lost its lease. From December of 1982 to the present, the North Street Book Shoppe at 17 Washington Avenue has been the only adult bookstore in the Village of Endicott.

On July 18, 1983, defendant E.A. Kudgus, Endicott Superintendent of Public Works, issued to plaintiff a sign permit. Although such a permit would ordinarily expire on June 1 of the following year, this one was scheduled to expire October 31, 1983, the date the amortization period of Zoning Law § 20–225 ended.

On November 1, 1983, defendant Paul J. Ripic, Endicott Code Enforcement Officer, made an inspection of the premises at 17 Washington Avenue and determined from the materials sold and exhibited there and from the store's location that the plaintiff was operating an "adult entertainment" business in violation of Zoning Law §§ 20–222. Ripic did not look for, or find violations of any other ordinances by the bookstore. On November 3, 1983, plaintiff received notice that they must cease the operation of an "adult entertainment business" at 17 Washington Avenue within seven days of receipt, i.e., by November 10th.

The penalty for noncompliance was a fine of $200 per day. Plaintiff, in response, ceased doing business on November 9, 1983, and remained closed until this action was commenced and a temporary restraining order issued on November 23, 1983. That Order, which temporarily enjoined enforcement of the challenged ordinance, was extended by consent of counsel until such time as the court ruled upon plaintiff's motion for a preliminary injunction.

As noted previously, § 20–222 of the Ordinance prohibits adult entertainment businesses from being located within 500 feet of any residence or within 1,000 feet of any church, school, park, playground, amusement arcade, or existing adult entertainment businesses. It is undisputed that under the Ordinance, plaintiff may no longer operate its adult entertainment business at 17 Washington Avenue, or anywhere else in the Central Business District of Endicott.

Defendants are able to identify two areas in Endicott—a village of 3.1 square miles—where plaintiff could relocate without violating the challenged Ordinance or other zoning ordinances. Both areas are zoned for "industrial" use.

The first area, which extends some 800 feet, is presently occupied by a liquor store, a grocery store, parking lots, warehouses, and a construction site.[2] Evidently, there is no building now available for use as a bookstore. There is unoccupied space where a bookstore could be constructed, but it was not established whether any of that space is available for sale or lease.

The second area extends for approximately 1,200 feet on the north side, and 800–1,000 feet on the south side of a street that is well travelled by commuters.[3] The various owners of the properties in the area were identified at the hearing, and there was evidence of two industrial structures presently for sale. However, extensive remodeling would be required for

2. This area is on Hays Street from about North Street to Watson Boulevard.

3. This area is along East Franklin Street extending to Clark Street from Oak Hill Avenue to west of Robble Avenue.

plaintiff to convert such structures to its use.

Although plaintiff urges the court to find that relocation to one of the above-mentioned areas would be "commercially unfeasible," the proof was inconclusive in that regard. However, at the very least, plaintiff established that relocation would be commercially undesirable due to the difficulty and expense of obtaining a permissible site and of constructing or converting a structure for use as a bookstore, coupled with the probable decrease in business due to the less favorable location.

Under such circumstances, the court finds that the Ordinance at issue here would have the effect of significantly burdening plaintiff's expression and impairing public access to sexually-oriented material in Endicott.

## II.

To obtain a preliminary injunction in this circuit, the movant must show (a) irreparable harm; and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979).

### A. *Irreparable Harm*

■ Although the material sold and exhibited by the plaintiff is "sexually-explicit," there is no contention by the defendants that it is "obscene" under prevailing constitutional standards. *See Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Plaintiff's expression is therefore protected from unjustified governmental infringement by the first and fourteenth amendments. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 208, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975).

■ Since the court finds that the defendants' enforcement of the challenged Ordinance would significantly burden constitutionally protected expression, irreparable harm must be presumed. As the Supreme Court held in *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976), "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

■ Defendants contend that the plaintiff has suffered no irreparable injury because it moved to 17 Washington Avenue after the enactment and with full notice of the Ordinance. That contention is unpersuasive. If the Ordinance had regulated the location of adult entertainment businesses without suppressing or greatly restricting access to lawful speech, then arguably any such business that began after enactment of the Ordinance could not complain of irreparable injury. *See Young v. American Mini Theaters*, 427 U.S. 50, n. 35, 96 S.Ct. 2440, n. 35, 49 L.Ed.2d 310, n. 35. In such case, it would not be liberty interests, but property interests that were at stake and the principle of *Elrod v. Burns* would be inapplicable. In this instance, however, there is a significant impairment of first amendment rights. There is no support for the proposition that such rights may be asserted only by businesses that were in operation prior to the enactment of the offensive Ordinance. Were that so, a local government could curtail lawful speech with impunity, so long as it exempted persons and businesses who resided or operated within the jurisdiction prior to the restrictive measure.

■ Defendants also argue that the plaintiff has and will suffer no irreparable injury because the Ordinance allows it to continue operation at its present location, so long as it reduces its sale of sexually explicit material to a level that would place it outside the Ordinance's definition of an "adult entertainment business." § 20–221. This argument, too, lacks merit. Defendants are instructing the plaintiff to either curtail its lawful speech or relocate; each alternative constitutes a significant burden on lawful speech. *See, E & B Enterprises v. City of University Park*, 449 F.Supp. 695 (N.D.Texas 1977) (holding unconstitutional a zoning ordinance that, "in effect, require[d] [an adult theater] to change the

type of films it showed or move out of University Park").

Plaintiff has therefore satisfied the irreparable harm prong of the preliminary injunction standard.

## B. *Likelihood of Success on the Merits*

[5] The Ordinance at issue here was enacted pursuant to the village's authority to zone and control land use for the common benefit of its residents. Although that authority is "undoubtedly broad and its exercise is an essential aspect of achieving a satisfactory quality of life," *Schad v. Village of Mt. Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981), it nevertheless "must be exercised within constitutional limits." *Id.* 452 U.S. at 68, 101 S.Ct. at 2182.

The *Schad* decision contains the Supreme Court's most recent instruction on determining the constitutionality of a zoning ordinance that affects protected expression. As the Court stated therein:

> [W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest. *Id.* [452 U.S.] at 68, [101 S.Ct. at 2182].

Accordingly, this court must (1) scrutinize the government interests purportedly served by the ordinance to ensure that such interests are legitimate and substantial; and (2) examine the scope of the ordinance to ensure that it is narrowly drawn so as to serve those interests without unnecessarily interfering with first amendment freedoms.

### (1) *The government interest.*

■ Turning first to the government interest at stake, it must be stated at the outset that popular disapproval or distaste for the content of plaintiff's expression is not, itself, a permissible basis for governmental infringement of expression. As the Supreme Court stated in *Erznoznik, supra:*

> [W]hen the government, acting as censor, undertakes selectively to shield the public from some kinds of speech on the ground that they are more offensive than others, the First Amendment strictly limits its power.... Selective restrictions

have been upheld only when the speaker intrudes on the privacy of the home ... or the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure. 422 U.S. at 209 [95 S.Ct. at 2272] [Citations omitted].

*See also, Young v. American Mini Theatres,* 427 U.S. 50, 79–80, 96 S.Ct. 2440, 2456–57, 49 L.Ed.2d 310 (Powell, J. concurring) (the government interest must be "unrelated to the suppression of free expression.")

■ The defendants have, however, articulated a number of government interests that the Ordinance purportedly serves which are unrelated to the suppression of plaintiff's expression. First and foremost, the Ordinance itself contains a recitation of purpose, § 20–220, which states as follows:

> Section 20–220. *Purpose*
>
> The establishment of certain adult entertainment business in the Village of Endicott will tend to result in the blighting and deterioration of the Village. Accordingly, it is necessary that these businesses be regulated in such a manner as to prevent the erosion of the character of the Village. It is necessary to regulate the establishment of such "adult entertainment" businesses within close proximity to residentially zoned areas, schools, churches, parks, playgrounds and amusement arcades, so as to minimize the proliferation of criminal activity and a blighting and degrading effect upon surrounding neighborhoods.

Moreover, some of the many residents who spoke in opposition to the adult bookstore at the Village Board hearings expressed a concern for economic stability in the area of Washington Avenue, preservation of the character of the community, and the welfare of minor children.

The government interest in preventing deterioration of a community is beyond doubt a legitimate one, and has, in certain instances been found by the Supreme Court to be a sufficient basis for sustaining zoning ordinances that regulate adult entertainment businesses. *E.g. Young v. Amer-*

*ican Mini Theatres, supra.* However, it is not enough for a local government to simply articulate an interest in preventing neighborhood blight; it must be prepared both "to articulate, *and support*, a reasoned and significant basis for its zoning decision." *Schad, supra*, 452 U.S. at 77, 101 S.Ct. at 2187 (Blackmun, concurring) (emphasis added).

A comparison of the *Young* and *Schad* decisions illustrates this crucial point. In *Young*, the Court upheld a Detroit zoning ordinance that dispersed a "combat zone" —a concentration of adult entertainment businesses—by providing that an adult theater could not be located within 1,000 feet of any two other "regulated uses" or within 500 feet of a residential area. Like the defendants here, the defendants in *Young* invoked a government interest in preventing the deterioration of their municipality's commercial neighborhoods. *Id.* 427 U.S. at 75, 96 S.Ct. at 2454. But unlike the defendants here, the Detroit Common Council was acting on the basis of solid evidence of a relationship between "combat zones" and neighborhood deterioration. For instance, the Common Council's findings were supported by police department statistics, *id.* 427 U.S. at 55 n. 8, 96 S.Ct. at 2445 n. 8, and by the opinions of urban planners and real estate experts, who concluded that:

> the location of several such businesses in the same neighborhood tends to attract an undesirable quantity and quality of transients, adversely affects property values, causes an increase in crime, especially prostitution, and encourages residents and businesses to move elsewhere. *Id.* [427 U.S.] at 55, [96 S.Ct. at 2445].

The strong factual basis that the *Young* defendants had for attributing neighborhood deterioration to the existence of "combat zones" was crucial to the Court's decision to uphold the ordinance. As the Court noted subsequently in *Schad:*

> [I]t was emphasized in [*Young*] that the evidence presented to the Detroit Common Council indicated that the concentration of adult movie theaters in limited areas led to the deterioration of surrounding neighborhoods and it was concluded that the city had justified the inci-

dental burden on First Amendment interests resulting from merely dispersing, but not excluding adult theaters. 452 U.S. at 71–72, [101 S.Ct. at 2184].

*Schad* involved a challenge to a zoning ordinance in a New Jersey borough that banned live nude dancing, along with most other forms of live entertainment. Although the defendants invoked legitimate interests similar to those articulated by the *Young* defendants, the Supreme Court found that the defendants' justifications did not withstand scrutiny:

> The Borough has presented no evidence, and it is not immediately apparent as a matter of experience, that live entertainment poses problems of this nature more significant than those associated with various permitted uses; nor does it appear that the Borough's zoning authority has arrived at a defensible conclusion that unusual problems are presented by live entertainment. 452 U.S. at 73, [101 S.Ct. at 2185].

The interests invoked by the defendants herein are far more similar to the speculative concerns that failed to withstand scrutiny in *Schad* than to the proven concerns that were deemed substantial in *Young.* The record indicates that the Village Board conducted no studies, and made no findings of increased crime, decreased property values, fleeing of businesses, or exposure of minors. *See E & B Enterprises v. City of University Park, supra*, 449 F.Supp. at 696–67 (ordinance regulating adult theaters violated First Amendment; purported government interest was insubstantial since no evidence existed as to actual neighborhood deterioration). Indeed, the enactment of the Ordinance challenged herein virtually coincided with the opening of Mr. Bill's on Washington Avenue, so there could not have been any factual basis for the Board's determination, at least insofar as the Ordinance was enacted to protect that particular location from deterioration. To paraphrase the Supreme Court's observation in *Schad*, it is not immediately apparent, as a matter of experience, that the presence of a single adult bookstore on

Washington Avenue poses problems of the nature anticipated by the defendants, which are more significant than those associated with various permitted uses.

Although plaintiff contends that fact-finding must, as a matter of due process, precede the enactment of any zoning ordinance which affects protected expression, *see Bayou Landing, Ltd. v. Watts*, 563 F.2d 1172 (5th Cir.1977), the Supreme Court decision in *Schad* apparently contemplates that a local government may attempt to support its ordinance with evidence at the time it is challenged. The defendants here, however, have failed to proffer any evidence of a relationship between the plaintiff's business and neighborhood deterioration, even though the adult bookstore had been in existence on Washington Avenue for 1½ years at the time of the preliminary injunction hearing.

To summarize thus far, while the defendants have articulated legitimate reasons for enacting an ordinance that affects protected expression, they failed to support their reasons with any evidence, both at the time it was enacted and at the time of the hearing on this motion for a preliminary injunction. Absent some showing of some factual basis for the purported government interest, this court cannot sustain an ordinance that would significantly burden constitutionally protected expression.

### (2). The Scope of the Ordinance

[9] In light of the holding above, that defendants have failed to demonstrate a substantial government interest, it is not necessary to analyze the scope of the ordinance in great detail. However, it is instructive to briefly compare the scope of this ordinance with the ordinances reviewed by the Supreme Court in *Young* and in *Schad*.

As noted previously, the ordinance in *Young* merely prohibited adult theaters from concentrating in commercial districts. As the Supreme Court emphasized in upholding the ordinance:

There is no claim that distributors or exhibitors of adult films are denied access to the market or, conversely, that the viewing public is unable to satisfy its appetite for sexually explicit fare. Viewed an an entity, the market for this commodity is essentially unrestrained. 427 U.S. at 62, [96 S.Ct. at 2448].

Moreover, as the Court observed in a footnote at the conclusion of its decision:

The situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech. Here, however, the District Court specifically found that "[t]he Ordinances do not affect the operation of existing establishments but only the location of new ones. There are myriad locations in the City of Detroit which must be over 1000 feet from existing regulated establishments. This burden on First Amendment rights is slight. 427 U.S. at 71 n. 35, [96 S.Ct. at 2453 n. 35].

The Endicott ordinance presents the "quite different" situation alluded to by the Supreme Court. By relegating the only adult book store in Endicott to a choice of two undesirable locations in industrial areas of the village, the ordinance does have "the effect of suppressing, or greatly restricting access to lawful speech."

It is true, as defendants emphasize, that the Endicott ordinance is not as restrictive as the ordinance held unconstitutional in *Schad*, which completely banned nude dancing from the Borough of Mt. Ephraim. However, the difference for First Amendment purposes, between forcing lawful speech beyond the municipal boundary and forcing lawful speech to an undesirable industrial section of the municipality is not significant. *See Purple Onion, Inc. v. Jackson*, 511 F.Supp. 1207 (N.D.Ga.1981) (holding unconstitutional an ordinance that relegated adult entertainment businesses to industrial sections of Atlanta).

### III.

As stated at the outset of the legal discussion herein, the Village of Endicott has the right—indeed, the duty—to exercise its zoning power to promote the common welfare of its residents. However, where, as here, the local government's exercise of its

zoning power intrudes upon the exercise of lawful speech, the village must be prepared to show that its ordinance is narrowly drawn and serves a substantial government interest. Based on the evidence presented this court concludes that the Village of Endicott has enacted a measure that significantly burdens lawful speech in order to serve government interests that lack a solid basis in fact.

Accordingly, plaintiff's motion for a preliminary motion is granted, and it is hereby

ORDERED, that

The defendants, Village of Endicott, New York, Marion Corino, Paul I. Ripic, E.A. Kudgus and Mary Jane Sedlac, their successors, agents, employees and assigns and all persons acting in concert with them are preliminarily enjoined and restrained as follows:

1. from enforcing the provisions of Local Laws, numbered 17–1982 and 18–1982, codified as Chapter 20—"Zoning", Article IV, Division 5, Sections 20–220 through 20–225 of the Village of Endicott, New York against plaintiff; and

2. from using the provisions thereof as criteria for the denial of business licenses and permits, including but not limited to a sign license for renewal of plaintiff's sign permit No. 670.

This preliminary injunction shall remain effective until further order of this court, or until a final order concluding this action is entered, whichever shall occur first.

Plaintiff shall post bond with the Clerk of the Court in the amount of $5,000.

It is so Ordered.