THE COUNTY OF COOK, Plaintiff-Appellee, v. RENAISSANCE ARCADE AND BOOKSTORE *et al.*, Defendants-Appellants (The Village of Franklin Park, Intervening Plaintiff-Appellee).

First District (2nd Division)   No. 85—717

Opinion filed February 18, 1986.—Modified on denial of rehearing December 23, 1986.

Adam Bourgeois, Ltd., Patrick A. Tuite, Ltd., and Michael Null, all of Chicago (Adam Bourgeois, Adam Bourgeois, Jr., Patrick A. Tuite, and David A. Mejia, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Henry A. Hauser, Joann Tansey, Matthew M. Klein, and Patricia M. Shymanski, Assistant State's Attorneys, of counsel), for appellee County of Cook.

Kinnaird & Kinnaird, of Chicago (Dorothy Kirie Kinnaird and R. Burke Kinnaird, of counsel), for appellee Village of Franklin Park.

JUSTICE STAMOS delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County enjoining defendants from operating their adult bookstores, which are located in unincorporated Cook County. On appeal, defendants challenge the constitutionality of the Cook County (hereinafter county) zoning ordinance which predicated that injunction.

This is the second time that Cook County's zoning scheme for adult uses is before this court. We had previously addressed the propriety of that scheme in *County of Cook v. World Wide News Agency* (1981), 98 Ill. App. 3d 1094, 424 N.E.2d 1173. An understanding of the issues raised in this second appeal requires an appreciation of the predecessor ordinance, and our decision on its validity. To that end, we detail those prior proceedings herein.

Cook County first sought to regulate "adult uses," as therein defined (see *County of Cook v. World Wide News Agency* (1981), 98 Ill. App. 3d 1094, 1095 nn.1-3), by the passage of its adult regulated use ordinance, enacted October 3, 1977 (Cook County Zoning Ordinance sec. 13.16 *et seq.* (1977)). Under that ordinance, the county successfully sought to enjoin operation of an adult bookstore, and the bookstore appealed. On appeal, we reversed the holding of the circuit court based on our decision that certain aspects of the zoning ordinance created an unconstitutional prior restraint on protected speech. (98 Ill. App. 3d 1094, 1100.) Significant to our discussion of the revised ordinance at issue herein was the nature of our 1981 decision.

In that opinion, we initially noted that the county's stated objective in enacting the ordinance (which sought to prevent a concentration of adult uses in any one area so as to avoid the deleterious effects that such concentration presented) served a valid governmental objective, and was constitutionally sound. (98 Ill. App. 3d 1094, 1097.) We then went on to analyze the case by phrasing the issue and settling it as follows:

> "The defendants contend that the zoning ordinance *** operates as a prior restraint on the sale of constitutionally protected materials. ***
>
> * * *
>
> *** Such restrictions are permissible only so long as they are of no greater than necessary to further the County's interest. We cannot say that the ordinance in the instant case satisfies this requirement." (98 Ill. App. 3d 1094, 1097-99.)

Of particular significance to that decision were those portions of the ordinance which required all operators of adult bookstores to obtain special use permits, and in most instances the consent of their neighbors, as a prerequisite to doing business.

The 1977 ordinance initially provided that adult uses could locate only in areas zoned C-3, and then only where they had obtained a special use permit providing for such operation. The process by which such a permit could be obtained was successively (a) application to the department of building and zoning; (b) public hearing by the zoning board of appeals; (c) recommendation of that board to the board of commissioners of Cook County; and (d) the ultimate grant or denial of the permit by that board. The zoning board of appeals was given a list of conditions upon which to base its decision (Cook County Zoning Ordinance secs. 13.16—2(a) through (d) (1977)), but no such conditions were placed upon the board of commissioners. The ordinance also provided that no two adult uses could locate within 1,000 feet of one another. (Cook County Zoning Ordinance sec. 13.16—1 (1977).) Additionally, the ordinance stated that it was unlawful to establish an adult bookstore, adult motion picture theatre or other facilities of a similar type within 1,000 feet of any area zoned for residential use or used by churches or schools. (Cook County Zoning Ordinance sec. 13.16—4 (1977).) (See *County of Cook v. World Wide News Agency* (1981), 98 Ill. App. 3d 1094, 1095-96.) Finally, the ordinance provided for a waiver of the restrictions as to location where the applicant obtained the consent of 60% of those residing, owning or doing business within 1,000 feet of the location sought by the applicant.

In reversing the circuit court's grant of an injunction, we focused primarily on the prior-restraint aspect of the scheme, stating in summary:

> "[V]arious sections of the Cook County Zoning Ordinance require the following: (1) that all operators of certain adult uses *** must obtain special use permits; (2) that these uses must be located in areas zoned C-3 ***; and (3) that the operators obtain a waiver of 60% of the persons owning, residing or doing business within a radius of 1,000 feet of the location ***. Such a zoning scheme operates as a prior restraint on speech and is therefore unconstitutional." (98 Ill. App. 3d 1094, 1100.)

It should be obvious from even the most cursory reading of our opinion that it was only the prior-restraint aspects of the zoning ordinance which were stricken by this court; the remainder of the zoning ordinance was left intact. In fact, given our reliance on the United States Supreme Court's decision in *Young v. American Mini Theatres, Inc.*

(1976), 427 U.S. 50, 49 L. Ed. 2d 310, 96 S. Ct. 2440, and our statement that the objective of the ordinance was constitutionally sound, it was clear that we approved the remaining provisions of the ordinance. (We note parenthetically that our approval was alluded to in the 1981 amendment to the zoning ordinance. Cook County Zoning Ordinance sec. 13.16—1 (1981).)

Thereafter, on December 7, 1981, the Cook County board of commissioners adopted an amendment to the Cook County zoning ordinance relating to adult uses. Section 6 of that amendment states that "Article 13 of the Zoning Ordinance is hereby amended *by adding the following.*" (Emphasis added.) As noted, the amended ordinance declares that this court had approved the purpose of the ordinance. It goes on to provide as follows:

> "In the development and execution of this Ordinance, it is recognized that there are some uses which, because of their very nature, are recognized as having serious objectionable operational characteristics, particularly when several of them are concentrated under certain circumstances, thereby having a deleterious effect upon the adjacent areas, particularly adjacent and nearby residential and commercial areas where nurseries, schools, nursing homes, churches and similar uses are located. Proper and realistic zoning and special regulations are necessary to insure that these adverse effects will not contribute to the blighting, downgrading of the surrounding neighborhood, or discouraging normal development of undeveloped areas. These special regulations are itemized in this section. A primary control or regulation is for the purpose of preventing a concentration of these uses in any one area. To prevent concentration of such uses from having an adverse effect upon the adjacent and nearby residential and commercial areas above referred to, such uses are hereby established as permitted uses in all the 78 industrially zoned areas of I-2, I-3, and I-4 and as special uses in all the 245 commercially zoned areas of C-3, C-4, C-6 and C-8. To prevent such uses from having an adverse effect upon adjacent areas in the C-3, C-4, C-6 and C-8 commercial zones, not more than two such uses shall be established within one thousand feet of each other."

The amendment proceeds to provide that the provision as to location may be waived, again if certain findings are made by the zoning board of appeals.

Notice was given to each of the defendants in January 1982, pursuant to the amended ordinance, that their businesses were noncon-

forming and subject to amortization. In March 1983, plaintiff Cook County filed the instant injunctive action against defendants, who thereupon filed motions to dismiss the complaint, challenging the constitutionality of the ordinance, which motions were denied by the circuit court. Defendant Mannheim Books filed a motion for substitution of judges, which was denied as untimely presented. On March 19, 1983, trial of this cause began.

There are 1,225 I (industrial), C (commercial) and R (residential) zones in unincorporated Cook County. The amended ordinance permits the location of adult uses as of right in only the 78 zones designated I-2, I-3 and I-4. The ordinance also permits the operation of adult uses in C-3, C-4, C-6 and C-8 commercial zones, but conditions such operation upon first obtaining special use approval from the county. (Cook County Zoning Ordinance sec. 13.16—1 (1981).) The process required for such permits is substantially similar to that of the 1977 ordinance and condemned by this court in *World Wide News Agency,* in that it requires findings by the zoning board of appeals but does not place any controls on the ultimate grant or denial of the permit by the county board of commissioners. (Cook County Zoning Ordinance sec. 13.16—2 (1981).) Preexisting uses which do not conform to the amended ordinance are subject to the amortization provisions of section 13.16—4 of the ordinance, which require the discontinuance of a preexisting but nonconforming adult use within six months of notice by the county.

At trial, defendants presented expert testimony that the total area of I-2, I-3 and I-4 zones comprised 5.7% of unincorporated Cook County, and that the overwhelming majority of sites located within those zones were either unsuitable or unavailable for adult uses. Plaintiff presented expert testimony that there was much vacant land in the I zones upon which adult uses could operate.

Other witnesses testified as to the deleterious effects that defendants' establishments had on areas in which they did business and as to numerous incidents in which prostitution was observed in or near those establishments.

On March 8, 1985, the circuit court entered an order for a permanent injunction in which it found that the ordinance furthered an important and substantial governmental interest, that the county's regulation of adult uses was unrelated to the suppression of free expression, and that the ordinance would not have the effect of suppressing access to any of the sexually explicit materials purveyed by defendants. The circuit court found that there were "at least 78 different I-2, I-3 and I-4 locations within unincorporated Cook County,

many of which would be appropriate relocation sites for adult uses; and which would make the kind of material and entertainment regulated by the ordinance available to the general public." Defendants appeal from this order.

Defendants contend on appeal that the Cook County zoning ordinance offends the first and fourteenth amendments to the United States Constitution. They argue that the ordinance unconstitutionally restricts access to information that is protected by the first amendment. We find defendants' arguments persuasive.

The seminal case in defining the degree to which nonobscene, adult businesses may be regulated is *Young v. American Mini Theatres, Inc.* (1976), 427 U.S. 50, 49 L. Ed. 2d 310, 96 S. Ct. 2440, in which case the court upheld a Detroit zoning ordinance against a constitutional attack. The Detroit Common Council sought to disperse the sites of adult theatres so that a concentration of these businesses would not create a "skid row" environment. To achieve this end, the ordinance provided that an adult theatre could not locate within 1,000 feet of any two "regulated uses" including adult bookstores, cabarets, bars, pool halls and similar establishments that are commonly associated with a "skid row" neighborhood. 427 U.S. 50, 52 n.3, 49 L. Ed. 2d 310, 316 n.3, 96 S. Ct. 2440, 2444 n.3.

A plurality of the *Young* court found that the Detroit ordinance did not operate as an impermissible restraint upon constitutionally protected speech. This was so, according to the plurality, because the ordinance did not substantially restrict public access to adult films. *Young v. American Mini Theatres, Inc.* (1976), 427 U.S. 50, 62, 49 L. Ed. 2d 310, 321, 96 S. Ct. 2440, 2448.

Additionally, the plurality found that the ordinance survived strict scrutiny under the equal protection clause of the fourteenth amendment. In the plurality's judgment, even though the first amendment protects nonobscene but sexually explicit communication, a State may legitimately use the content of this material as a basis for placing it in a different classification from other kinds of information and entertainment. The Detroit ordinance passed constitutional muster because the government had a valid interest in protecting the character of its neighborhoods, and the council was able to set forth a factual basis for concluding that its regulation would achieve the desired end. (*Young v. American Mini Theatres, Inc.* (1976), 427 U.S. 50, 70-71, 49 L. Ed. 2d 310, 326, 96 S. Ct. 2440, 2452-53.) The result would have been different, according to the plurality, if the Detroit ordinance had substantially suppressed lawful speech or affected existing establishments. Since there were "myriad" locations in which new adult busi-

nesses could operate, however, the ordinance did not offend the constitution. 427 U.S. 60, 71 n.34, 49 L. Ed. 2d 310, 326 n.34, 96 S. Ct. 2440, 2453 n.34.

Justice Powell concurred in the *Young* case and set forth a four-part test to determine the constitutionality of zoning laws that infringe upon freedom of expression. Under the standard used by Justice Powell, a regulation is justified "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on first amendment freedoms is not greater than is essential to the furtherance of that interest." *Young v. American Mini Theatres, Inc.* (1976), 427 U.S. 50, 79-80, 49 L. Ed. 2d 310, 331, 96 S. Ct. 2440, 2457, citing *United States v. O'Brien* (1968), 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673.

Several years after the *Young* decision, the United States Supreme Court again considered the constitutionality of a zoning ordinance that curtailed free speech. In *Schad v. Borough of Mount Ephraim* (1981), 452 U.S. 61, 68 L. Ed. 2d 671, 101 S. Ct. 2176, the court struck down a municipal ordinance that prohibited all live entertainment within the city limits. According to the *Schad* court, when a zoning ordinance "infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." 452 U.S. 61, 68, 68 L. Ed. 2d 671, 686, 101 S. Ct. 2176, 2182-83.

Most recently, the United States Supreme Court handed down its decision in *City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 481, 89 L. Ed. 2d 29, 106 S. Ct. 925, wherein the court upheld the constitutionality of a zoning ordinance drastically distinct in approach from that approved in *Young* and stricken in *Schad.* Whereas Detroit elected to disperse adult uses, and Mount Ephraim sought to ban them, Renton chose to concentrate them. The vehicle employed by Renton to achieve that end was a restriction on the location of any new adult uses within 1,000 feet of any residential area, or any church, school or park. As a consequence of that restriction, there were only 520 acres in the city (roughly 5% of the land total) in which adult uses could operate.

The Supreme Court deemed the case to be controlled by its previous decision in *Young.* The analysis began by labelling Renton's ordinance a "content-neutral time, place and manner" regulation, because its aim was not based on the *content* of the speech regulated, but on the *secondary effects* of that expression upon adjacent neighborhoods.

(*City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 481, ___, 89 L. Ed. 2d 29, 37, 106 S. Ct. 925, 928.) In reaching that conclusion, the court emphasized that Renton's ordinance was prospective only, and did not ban adult uses outright. Where ordinances are content neutral, the court stated, they are "acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." (475 U.S. 481, ___, 89 L. Ed. 2d 29, 37, 106 S. Ct. 925, 928.) The court concluded that Renton's ordinance met that test.

The ordinance *sub judice* does not fit neatly into the analysis of any of the above cases. It does not seek merely to disperse adult uses, as in *Young,* nor does it seek either to concentrate them, as in *Renton,* or ban them, as in *Schad.* To the contrary, Cook County has chosen to incorporate certain aspects of both Detroit's approach as well as portions of Renton's. Despite the Supreme Court's approval of these methods in isolation, the amalgam of schemes embraced herein does not survive scrutiny. This is true under any of the above analyses, as Cook County's scheme significantly impedes access to constitutionally protected materials.

■ Initially, we must address the county's argument that we are *per se* bound by the circuit court's factual determinations. The county premises that assertion upon Supreme Court Rule 366 (87 Ill. 2d R. 366), which limits courts of review to a determination of whether the judgment is against the manifest weight of the evidence. We believe that our inquiry is guided by the principles enunciated in *Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 499, 510, 80 L. Ed. 2d 502, 515, 523, 104 S. Ct. 1949, 1958, 1965, wherein the court stated:

> "[I]n cases raising First Amendment issues we have repeatedly held that an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure 'that the judgment does not constitute a forbidden intrusion on the field of free expression.' *New York Times Co. v. Sullivan,* 376 U.S., at 284-286 * * *."
>
> "The requirement of independent appellate review reiterated in *New York Times Co. v. Sullivan* is a rule of federal constitutional law."

It goes without saying that if such inquiry is mandated by our Federal Constitution, any contrary rule of narrower limitation must yield. Nowhere in *Bose* is there any indication that a more circumscribed review is contemplated. Indeed, the majority therein suggested that an independent review was necessary in the first amendment arena as an

essential bulwark to the protections encompassed by that amendment, particularly where, as here, the question is not strictly factual but presents mixed questions of law and fact. We are bound by that requirement in our discussion herein.

■ Regardless of whether we employ the approach used in *Young,* or the *Renton* rubric, Cook County's zoning ordinance is unconstitutional as it is unduly restrictive of first amendment freedoms.

Unlike the ordinance in *Young,* which merely dispersed adult uses, the ordinance here relegates adult uses to industrial locations ill-suited to the operation of retail or commercial businesses. Defendants' expert witness, an urban geographer, examined the I-2, I-3 and I-4 zones where adult uses are free to operate. The geographer determined that these districts are inappropriate locations in which to establish a consumer-oriented enterprise since they are poorly lighted, relatively inaccessible, and characterized by heavy industrial and agricultural uses.

The plaintiff presented testimony by its own expert witnesses to rebut the defendants' evidence. A real estate appraiser testified that as much as 90% of the vacant land in I-2, I-3 and I-4 zones may be available for purchase at some price. The appraiser also said that in his view, several of the industrial zones were suitable for adult uses. In addition to the appraiser's testimony, the plaintiff also offered the testimony of an urban geographer. The geographer concluded from a survey of license plates that approximately 40% of the defendants' customers would travel 10 to 20 miles to reach an adult business.

Despite the testimony of these experts, plaintiff has failed to refute the fact that its ordinance substantially suppresses lawful speech. Because the ordinance significantly impedes public access to adult uses, it violates the standard set forth by the plurality in *Young.* In contrast to the ordinance in *Young,* the Cook County ordinance applies to existing as well as new establishments. An existing business located in a commercial zone must still secure a special use permit, or it must cease to operate within six months. (Cook County Zoning Ordinance sec. 13.16—4 (1981).) It is not generally unconstitutional for the government to apply a zoning ordinance to existing uses. (*Hart Book Stores, Inc. v. Edmisten* (4th Cir. 1979), 612 F.2d 821, 830.) However, most adult zoning ordinances passed in the wake of the *Young* decision contain grandfather clauses that exempt existing uses. (*Purple Onion, Inc. v. Jackson* (N.D. Ga. 1981), 511 F. Supp. 1207, 1224.) When a zoning ordinance applies to existing uses, and affects first amendment rights, it must be carefully scrutinized. (511 F. Supp. 1207, 1224.) Although a lack of a grandfather clause would not in it-

self be fatal, this fact, along with other restrictions placed upon adult businesses, makes Cook County's ordinance unconstitutionally suppressive of free speech.

Furthermore, the ordinance is suppressive of free speech because it banishes adult businesses to obscure industrial zones. Even if it is possible, as plaintiff contends, for an adult business to operate in one of these locations, it is extremely impractical. There is little likelihood that consumer-oriented enterprises like those affected by this ordinance could function in the midst of industrial or agricultural operations. Adult uses would languish in an industrial zone, and their remote location might eventually drive them out of business altogether. When the effect of a zoning ordinance is that a medium of lawful speech is squeezed out of its desirable locations to one that is undesirable, and public access to this communication is dramatically reduced, the ordinance runs afoul of the first amendment. See *Basiardanes v. City of Galveston* (5th Cir. 1982), 682 F.2d 1203, 1214; *North Street Book Shoppe, Inc. v. Village of Endicott* (N.D.N.Y. 1984), 582 F. Supp. 1428, 1435; *Purple Onion, Inc. v. Jackson* (N.D. Ga. 1981), 511 F. Supp. 1207, 1224.

The plaintiff seeks to justify its ordinance by noting that adult businesses are allowed to operate as special uses in 245 commercial zones in unincorporated Cook County. Initially, we note that under the predecessor ordinance adult uses could operate in commercial zones conditioned on obtaining a special use permit, a procedure we struck down in *World Wide News Agency* owing to the prior-restraint features of such a scheme. Moreover, while in theory this provision would expand the number of economically feasible locations in which defendants could operate their businesses, as a practical matter it is highly unlikely that the Cook County zoning board would approve an application for a special use permit by finding that the enterprise would be desirable enough to warrant its addition to the community. (See Cook County Zoning Ordinance sec. 13.10 (1981).) Indeed, the county produced extensive testimony regarding the adverse effects of adult uses on surrounding areas. Consequently, the fact that an adult business could, theoretically, operate as a special use does not significantly alter the suppressive nature of Cook County's zoning ordinance.

■ In addition to the fact that the ordinance in this case restricts public access to constitutionally protected materials, it also fails to pass Justice Powell's test as set forth in the *Schad* case. It is true, as plaintiff observes, that Cook County has the authority to restrict the location of adult businesses in a reasonable manner. (*Young v. Ameri-*

*can Mini Theatres, Inc.* (1976), 427 U.S. 50, 80, 49 L. Ed. 2d 310, 332, 96 S. Ct. 2440, 2457.) Moreover, there is no doubt that the government's interest in regulating adult uses is important and substantial. (427 U.S. 50, 80, 49 L. Ed. 2d 310, 332, 96 S. Ct. 2440, 2457.) Plaintiff has set forth ample evidence that a cluster of adult businesses has a deleterious effect upon surrounding commercial and residential areas. Given the county's legitimate concern with the unsavory effect of adult uses, it seems clear that the regulation of such businesses is unrelated to the suppression of free speech.

Notwithstanding these salutary features of the ordinance, it is still overly broad. The incidental effect of this regulation is greater than is essential to protect the government's interest. This being so, the ordinance fails the fourth part of Justice Powell's test. It also violates the mandate of the *Schad* court that an ordinance affecting first amendment rights must be narrowly drawn.

The articulated purpose of Cook County's ordinance is to insure that the "adverse effects [of adult uses] will not contribute to the blighting, downgrading of the surrounding neighborhood, or discouraging normal development of undeveloped areas. *** A primary control is for the purpose of preventing a concentration of these uses in any one area." (Cook County Zoning Ordinance sec. 13.16—1 (1981).) In keeping with this purpose, a provision of the ordinance disperses adult uses so that they cannot locate within 1,000 feet of one another. This portion of the law is narrowly drawn and essential to further the county's interest in preventing a concentration of adult uses from causing neighborhood blight.

However, the provision of the ordinance relegating adult uses to industrial zones is broader than is necessary to prevent neighborhood blight. It is the concentration of adult businesses that the county perceives as most deleterious to a surrounding neighborhood. Banishing adult businesses to industrial zones does nothing to prevent their concentration; in fact, it encourages it. The dispersal provision alone would be sufficient to forestall the development of a "skid row" environment injurious to surrounding residential areas. This is exactly the procedure approved in *Young.*

It is true that the Cook County ordinance does not go as far as the ordinance in *Schad.* In the *Schad* case, all live entertainment was banned from the city, and, here, adult uses are merely relegated to remote, unattractive locations. However, there is no significant difference, for first amendment purposes, between driving lawful speech beyond the municipal borders and forcing it to an undesirable location. *North Street Book Shoppe, Inc. v. Village of Endicott* (N.D.N.Y.

1984), 582 F. Supp. 1428, 1435.

Plaintiff claims that the Cook County ordinance is distinguishable from ordinances that have been found impermissibly restrictive of free expression. We are unpersuaded by this contention, however. The ordinance herein is at least as restrictive as some others that have been declared unconstitutional. (See, *e.g., North Street Book Shoppe, Inc. v. Village of Endicott* (N.D.N.Y. 1984), 582 F. Supp. 1428.) In fact, Cook County's zoning law is even more restrictive than some ordinances that have been found to impermissibly burden free speech. For example, in *Basiardanes v. City of Galveston* (5th Cir. 1982), 682 F.2d 1203, and *Purple Onion, Inc. v. Jackson* (N.D. Ga. 1981), 511 F. Supp. 1207, the zoning laws unconstitutionally relegated adult businesses to unattractive locations, but the ordinances in those cases contained grandfather clauses. In this case, not only are adult uses banished to remote industrial hinterlands, but existing uses are subject to regulation along with future businesses. If the ordinances in *Basiardanes* and *Purple Onion* were constitutionally infirm, then the ordinance in the present case is unconstitutional as well.

Nor does the current ordinance survive the scrutiny mandated by the Supreme Court's decision in *City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 481, 89 L. Ed. 2d 29, 106 S. Ct. 925. We do not, and indeed cannot, dispute the substantial nature of Cook County's purpose in enacting the ordinance (the first prong of the *Renton* analysis); the vice of the ordinance herein is that it runs counter to the second prong of the test, that being the availability of reasonable alternative avenues of communication. Notable among the features of *Renton*'s scheme were the fact that it was only prospective in nature, and the fact that it allowed adult theatres to locate and operate as of right in a wide variety of areas, consisting of

> " '[a]mple accessible real estate' including 'acreage in all stages of development from raw land to developed industrial, warehouse, office and shopping space that is criss-crossed by freeways, highways and roads.' " *City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 481, ___, 89 L. Ed. 2d 29, 41, 106 S. Ct. 925, 932.

Unlike Cook County, adult uses were not exiled by Renton to the industrial outback; rather, they were permitted as of right into commercial zones insulated by distance from residential areas where their objectionable side effects were minimal, and wherein they could freely disseminate their materials. Under such circumstances, there were adequate reasonable alternative avenues of communication left intact. Access to adult materials was not unduly restricted. As is obvious

from our prior discussion concerning *Young*'s application, the same is not true under Cook County's ordinance. The county, rather than affording adult uses access to commercial zones, required them to compete with heavy industry. Although it is not unconstitutional to place adult businesses in a position where they must fend for themselves on an equal footing with other purchasers or lessees, it still offends the constitution to banish adult uses to a real estate market where they have no reasonable ability to compete with their neighbors. An adult bookstore or cabaret is simply not on an equal footing to compete with the Ford Motor Company, the Metropolitan Sanitary District, the Standard Oil Company or similar industrial enterprises that purchase and develop large tracts of property in I-2, I-3 and I-4 zones.

In addition, unincorporated industrial zones are often bereft of water or utility services. One of the county's own experts noted that a developer who wishes to build in an unincorporated industrial area must seek an intergovernmental agreement with a nearby municipality to provide those services, obtain services from a private utility company, or build his own wells and septic tanks. Given these circumstances, it seems not only commercially impractical, but economically unfeasible, for an adult business to relocate in an industrial zone. "Reasonable alternative avenues of communication" presupposes a level playing field; such is not the case where small consumer-oriented businesses are forced to compete with corporate and municipal giants. The ordinance at issue herein significantly burdens the defendants' opportunity to attempt to compete successfully. For this reason, it fails the test embraced by *Renton*.

■ While the *Renton* court determined that a zoning ordinance need not provide commercially viable sites, it must still refrain from "effectively denying respondents a reasonable opportunity to open and operate an adult business." (*City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 481, ___, 89 L. Ed. 2d 29, 42, 106 S. Ct. 925, 932.) Apart from whether it is commercially viable for adult businesses to purchase land in industrial zones, the quality and nature of this property makes it largely unsuitable for the operation of a bookstore or nightclub. By definition, land zoned for industrial use is ill-suited for consumer-oriented enterprises. We believe that the free dissemination of constitutionally protected material would be unduly burdened by relegating them to locations that are poorly lighted, relatively inaccessible, and characterized by heavy industrial and agricultural uses.

It is true that according to one of plaintiff's experts, several industrial sites in Cook County are suited to the establishment of an

adult business by virtue of the fact that these sites border on major highways or roads. However, that expert did not establish that these large tracts had consumer access by streets on which defendants' businesses could operate. If defendants are forced not only to provide their own water, sewers, and utilities, but to build and identify their own streets and to install curbs, gutters and perhaps sidewalks amid tank farms and land fills, then the county has denied them a reasonable opportunity to operate.

The ordinance in *Renton* is different from the one herein, both on its face and in effect. In *Renton,* adult uses were not banished from commercial zones; they were simply required to locate a fixed distance from residences, schools and churches. Here, adult uses are relegated to industrial zones and can only locate in commercial zones as a special use. The land available to adult theatres in *Renton* apparently included some commercial space occupied by office and shopping facilities. This is in marked contrast to the industrial areas opened in Cook County. In view of the fact that the county has not left available a reasonable alternative avenue of communication, the ordinance is unconstitutional under *Renton.*

The current Cook County ordinance is less restrictive than its predecessor; however, it still unconstitutionally burdens lawful speech. In *County of Cook v. World Wide News Agency* (1981), 98 Ill. App. 3d 1094, we struck down the predecessor's requirement for special use permits in commercial zones, owing to the burden such prior approval required. That defect was not corrected by opening up the industrial areas.

■ In conclusion, it is manifest that the county's objective in enacting the zoning ordinance was to prevent concentration of adult uses. It is true that local authorities must be free to experiment with zoning schemes to achieve that end. (*City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 481, ___, 89 L. Ed. 2d 29, 41, 106 S. Ct. 925, 931.) In attaining that goal, however, the county must tread carefully so as not to unduly encumber access to constitutionally protected materials. In this case, the county's scheme, seeking to both disperse adult uses and to concentrate them, fails the test of reasonableness. It sweeps beyond the extent necessary to attain its goal. Banishing adult uses to industrial zones does nothing to prevent their concentration. Rather, it restricts access to them. Regardless of whether adult businesses are offensive to a majority of the community, the Cook County zoning board is not free to burden the defendants' rights to disseminate information or provide entertainment. In order to insure freedom of expression, we must necessarily be ex-

posed to some ideas, language or depictions that we find objectionable and view as the manure for the tree of liberty.

■ Defendants also contend that they were deprived of a fair trial due to the trial judge's denial of their petition for substitution. However, section 2—1001 of the Code of Civil Procedure requires applications for change of venue to "be verified by the affidavit of the applicant." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1001(c).) Defendant Mannheim Books' petition for change of venue due to prejudice of the trial judge was not so verified, and the trial court therefore properly denied it.

We reverse.

Reversed.

HARTMAN and SCARIANO, JJ., concur.