(No. 57968.—

GEORGE D. HARDIN, INC. *et al.*, Appellees, v. THE VILLAGE OF MOUNT PROSPECT, Appellant.

*Opinion filed December 1, 1983.*

Richard V. Houpt, David C. Newman, and Donald J. Moran, of Chicago (Pedersen & Houpt, of counsel), for appellant.

Herbert Lesser, of Chicago, for appellees.

Thomas W. Kelty and Stanley L. Morris, of Pfeifer & Kelty, P.C., of Springfield, for *amicus curiae* Illinois Municipal League.

JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs, George D. Hardin, Inc., and Ralph Martin, filed in the Cook County circuit court a complaint on their own behalf, and on behalf of a class of similarly situated special-assessment bondholders. They sought a declaration of an express trust and an accounting from defendant, the Village of Mt. Prospect, for certain special assessments collected by it. The two named plaintiffs allege that they represent a group of holders of special-assessment bonds which defendant issued in the years 1926 through 1930, as provided by statutes, the substance of which now is found in article 9 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 9—1—1 *et seq.* (hereinafter referred to as the Local Improvement Act)). Defendant customarily issued these special-assessment bonds to contractors who constructed improve-

ments within the village. Under the Local Improvement Act, the bonds were to be paid from the monies collected by defendant from the owners of the benefitted property against which costs of the improvement had been assessed. Defendant, acting as trustee for the bondholders (*Rothschild v. Village of Calumet Park* (1932), 350 Ill. 330, 339; *Conway v. City of Chicago* (1908), 237 Ill. 128, 136), collected the special assessments from the property owners in annual installments. During the Depression era of the 1930's, however, property owners were often unable to pay their installments when due, and many special assessments were never fully paid. (See Gilbert, *The Path of Special Assessment Bond Law in Illinois: From the Attic to the Courtroom*, 27 De Paul L. Rev. 651 (1978).) All the special-assessment installments at issue in this case have been delinquent for more than 30 years.

In their complaint, plaintiffs alleged the funds collected had been commingled or improperly transferred and that defendant had not paid to bondholders all of the sums which it collected. Defendant moved to dismiss, citing section 1.1 of "An Act in relation to delinquent taxes and special assessments" (Ill. Rev. Stat. 1981, ch. 120, par. 891.1). This legislation provides, in pertinent part, as follows:

> "Sec. 1.1 In cases where bonds issued by a municipality are secured *** from specific revenues other than ad valorem tax levies and the payment of the *** specific revenue has been delinquent for a period of 30 years such *** revenue shall be presumed to be uncollectible and in all such cases, the municipal treasurer shall enter upon the appropriate bond issue records where such bonds appear the words 'CANCELLED—Revenue Uncollectible', and shall adjust the books and records accordingly.
>
> When such bonds have been designated as above the municipality may use any money it holds for the payment of those bonds for any general corporate purpose."

In their reply to defendant's motion to dismiss, plain-

tiffs challenged this legislation as an unconstitutional impairment of contract in violation of article I, section 10, of the Federal Constitution and article I, section 16, of the Illinois Constitution. Plaintiffs also asserted that the quoted legislation constituted a deprivation of property without due process of law and an *ex post facto* law.

In a November 4, 1982, order the trial court denied defendant's motion to dismiss, holding that section 1.1 unconstitutionally impaired the contractual obligation between the bondholder and the municipality, contrary to the Federal and State constitutional provisions. Defendant then filed a motion to reconsider, requesting that the trial court rule on the constitutionality of the two remaining provisions of the statute, sections 1 and 2 (Ill. Rev. Stat. 1981, ch. 120, par. 891, 892). Section 1, much like section 1.1, provided that special-assessment installments delinquent for more than 30 years were presumed to be uncollectible but, unlike section 1.1, stated that money which the municipality held for payment to bondholders was to be used for projects similar to those for which the monies had originally been collected. Section 2 established a two-year grace period for municipalities to collect special-assessment installments delinquent for 30 years or to commence actions to foreclose liens thereon. In a second order, filed January 10, 1983, the trial court held that only those portions of sections 1 and 1.1 which permitted municipalities to use special-assessment funds for purposes other than bond payments constituted an unconstitutional impairment of contract. The second order did not discuss the constitutionality of section 2. The trial court then gave defendant 28 days in which to answer the complaint and stated that there was no just cause to delay appeal of the order.

This order, which extended the time for filing an amended pleading, is clearly not a final, appealable order, and does not become so by addition of the "no just cause to delay appeal" language (*Crane Paper Stock Co. v. Chi-*

*cago & Northwestern Ry. Co.* (1976), 63 Ill. 2d 61, 66). Rule 302(a) (87 Ill. 2d R. 302(a)) permits direct appeals to this court only where a statute has been held invalid by a final judgment of the trial court, which this order is not. Because of the importance to municipalities of the constitutional issue here involved, however, we have concluded to retain the case and decide the question in the exercise of our supervisory authority under article VI, section 16, of our constitution. *People v. Heddins* (1977), 66 Ill. 2d 404, 406; *Crane Paper Stock Co. v. Chicago & Northwestern Ry. Co.* (1976), 63 Ill. 2d 61, 67; *Brokaw Hospital v. Circuit Court* (1972), 52 Ill. 2d 182, 187.

A preliminary question involves the parties' dispute over the scope of the order below. Plaintiffs contend that the trial court's second order effectively narrowed its first decision, and thus the two orders should be read together as striking only those portions of sections 1 and 1.1 permitting municipalities to use special-assessment funds for other purposes. Defendant argues that the second order confirmed and restated the trial court's initial decision that the legislation was completely invalid. Furthermore, defendant reasons that even if the second order were to be narrowly construed, the rest of the statute would be meaningless.

Although the scope of the trial court decision is unclear, even assuming *arguendo* that the trial court struck only those portions of the statutes which permit municipalities to use assessment monies for other purposes, those provisions are not severable. If only those particular portions are stricken, what remains is a statute permitting municipalities to cancel bonds which have been delinquent for 30 years, but which does not direct disposition of collected but undisbursed funds. The general rule in determining whether an invalid portion of a statute is severable so that the remainder may stand is that the unconstitutional part does not invalidate the balance if what remains " '*** is

complete in itself and capable of being executed wholly independently of that which is rejected \*\*\* unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated.' " (*Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 73, quoting *Village of Oak Lawn v. Marcowitz* (1981), 86 Ill. 2d 406, 421; *City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 490; *Livingston v. Ogilvie* (1969), 43 Ill. 2d 9, 23.) Applying that rule here, it seems apparent that invalidating the authority to use the collected funds for other municipal purposes leaves the statute meaningless insofar as it relates to the defaulted bond collections—the bonds have been cancelled but the funds cannot be used. Clearly, we believe, a major purpose of the General Assembly in enacting the legislation would be frustrated. Without the municipal benefits resulting from release of the funds, we believe this legislation would not have been adopted. Consequently, in our judgment the bond-cancellation provisions cannot stand alone.

Defendant does not dispute the existence of a contract between defendant and plaintiffs based on its issuance of special-assessment bonds. Defendant does, however, argue that the challenged legislation does not impair any obligation of contract, because upon their enactment, sections 1 and 1.1 became part of the contract between the municipality and the bondholders. We do not agree. The contracts between the municipality and the bondholders in this case were entered into more than 40 years before enactment of the challenged legislation. The law is well settled that only statutes in force at the time a contract is made are incorporated therein. *Ogden v. Saunders* (1827), 25 U.S. (12 Wheat.) 213, 323-24, 6 L. Ed. 606, 644; *W.B. Worthen Co. v. Kavanaugh* (1935), 295 U.S. 56, 60, 79 L. Ed. 1298, 1301, 55 S. Ct. 555, 556, citing *Sturges v. Crowninshield* (1819), 17 U.S. (4 Wheat.) 122, 197, 4 L. Ed. 529, 549; *Home Building & Loan Association v. Blaisdell* (1934),

290 U.S. 398, 429, 78 L. Ed. 413, 423-24, 54 S. Ct. 231, 237.

Defendant's second argument in favor of the constitutionality of sections 1 and 1.1 requires a more detailed analysis. Although acknowledging that the language of the contract clause is absolute, defendant correctly observes that the Federal Constitution's clause prohibiting impairment of contractual obligations has not been so interpreted. The United States Supreme Court, in *Home Building & Loan Association v. Blaisdell* (1934), 290 U.S. 398, 428, 78 L. Ed. 413, 423, 54 S. Ct. 231, 236, recognized that the contract clause "is not to be read with literal exactness like a mathematical formula." (See also *City of El Paso v. Simmons* (1965), 379 U.S. 497, 508, 13 L. Ed. 2d 446, 454, 85 S. Ct. 577, 583; *United States Trust Co. v. New Jersey* (1977), 431 U.S. 1, 52 L. Ed. 2d 92, 97 S. Ct. 1505.) We see no reason why the virtually identical language in our State Constitution should not be interpreted in the same fashion. Both United States Supreme Court decisions and decisions of this court have held that the contract clause does not immunize contractual obligations from every conceivable kind of impairment or from the effect of a reasonable exercise by the States of their police power. See, *e.g., Allied Structural Steel Co. v. Spannaus* (1978), 438 U.S. 234, 241, 57 L. Ed. 2d 727, 734, 98 S. Ct. 2716, 2721; *City of El Paso v. Simmons* (1965), 379 U.S. 497, 509, 13 L. Ed. 2d 446, 455, 85 S. Ct. 577, 584; *Meegan v. Village of Tinley Park* (1972), 52 Ill. 2d 354, 358.

In our judgment the opinion of the United States Supreme Court in *United States Trust Co. v. New Jersey* (1977), 431 U.S. 1, 52 L. Ed. 2d 92, 97 S. Ct. 1505, is dispositive of this case, for the circumstances there considered insufficient to sustain legislative alteration of contractual obligations were substantially more compelling than here. In that case, the States of New York and New Jer-

sey, by a 1962 statutory covenant, limited the ability of the Port Authority of New York and New Jersey to divert, for purposes of subsidizing rail-passenger transportation, certain revenues and reserves previously pledged as security for bonds issued by the Port Authority. Concurrent legislation in both States some 12 years later purported to retroactively repeal the earlier covenant. That legislation was attacked as impermissibly impairing the obligations of the Authority bonds issued prior to repeal. While the State court held the repealing legislation was a reasonable exercise of the State's police power (*United States Trust Co. v. State* (1976), 69 N.J. 253, 353 A.2d 514), the Supreme Court reversed on the ground that the 1974 repealer statute was an unconstitutional impairment of the Port Authority's contract with its bondholders. In reaching this conclusion, the court reviewed at length the history of the contracts clause and noted that it has upheld State legislation impairing contracts in very few cases. Only once in this century, in the case of *Faitoute Iron & Steel Co. v. City of Asbury Park* (1942), 316 U.S. 502, 86 L. Ed. 1629, 62 S. Ct. 1129, has the court upheld a statute that impaired contract rights of municipal bondholders. In that case, the challenged legislation permitted a bankrupt local government to go into receivership, but it also provided significant protections for all creditors: any bankruptcy repayment plan required approval of 85% of all creditors, and nonconsenting creditors were to be bound by the plan only after a State court determination that the municipality could not otherwise pay its creditors and that the repayment plan was in the best interest of all creditors.

The legislation before us is clearly distinguishable from that upheld in *Faitoute*. In contrast to the provisions for creditors in that case, sections 1 and 1.1 here provide no protective measures of any sort to the bondholders; instead, they permit a blanket cancellation of all special-assessment bonds on which payments have been delinquent

for 30 years, and conversion of any remaining funds to other corporate purposes.

Nor do justifications offered for this legislation approach the compelling levels of the reasons held insufficient in *United States Trust Co.* There the court invalidated the statute even though the country was experiencing an energy crisis of unprecedented dimensions, and the legislative action had been designed to encourage energy conservation and reduce air pollution by attracting former automobile commuters to an enlarged rail system. Although acknowledging the benefits that could inure to the public through this exercise of the State's police power, the court held that these positive aspects of the legislation did not outweigh the harm bondholders would undergo. This harm, although incapable of any precise definition, was characterized as a "thin" secondary market for the bonds accompanied by a price drop in relation to other formerly comparable securities.

Here, the justifications offered for the contractual impairment are, in our judgment, much less persuasive than in either *Faitoute* or *United States Trust Co.* Those justifications are said to be the easing of municipal record-keeping burdens and the elimination of municipal liability for improper record keeping, commingling, conversion or erroneous disbursement of funds. Dealing with old records, lost owners and missing bonds is doubtless a difficult, expensive, and time-consuming task, as defendant contends, although we note that one of the named plaintiffs here is one of the original contractors who constructed the improvement, taking the bonds in payment. Compared with the energy-conservation and pollution-reduction benefits which were insufficient to save the statute in *United States Trust Co.*, however, the justifications defendant offers for sections 1 and 1.1 fade into relative insignificance. Simplifying municipal record keeping and eliminating the possibility of stale claims are simply insufficient bases for uphold-

ing a statute which, without notice of any type, permits cancellation of valid bonds and conversion of undisbursed funds.

We accordingly hold that all portions of section 1 and 1.1 of "An Act in relation to delinquent taxes and special assessments" (Ill. Rev. Stat. 1981, ch. 120, pars. 891, 891.1) that deal with special assessments are unconstitutional impairments of contractual obligations in violation of the Federal and State constitutions.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*