(No. 64750.—

THE COUNTY OF COOK, Appellant, v. RENAIS-SANCE ARCADE AND BOOKSTORE *et al.*, Appellees (The Village of Franklin Park, Intervening Appellant).

*Opinion filed March 30, 1988.*

124

126

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Deputy State's Attorney, and Susan Condon and Patricia M. Shymanski, Assistant State's Attorneys, of counsel), for appellant.

Kinnaird and Kinnaird, of Chicago (Dorothy Kirie Kinnaird and R. Burke Kinnaird, of counsel), for intervening appellant.

Adam Bourgeois, of Jones, Ware & Grenard, and Patrick A. Tuite and David S. Mejia, of Tuite, Mejia & Giacchetti, all of Chicago, for appellees.

James E. Ryan, State's Attorney, of Wheaton (Keith E. Letsche, Assistant State's Attorney, of counsel), for *amicus curiae* County of Du Page.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, the County of Cook, filed separate complaints against defendants seeking to enjoin them from

operating their respective businesses in violation of the Cook County Zoning Ordinance. The causes were consolidated and the trial court entered an order allowing the Village of Franklin Park to intervene in the cause as a party plaintiff. After defendants' motions to dismiss were denied, the consolidated causes were tried before a judge in the circuit court of Cook County. At the conclusion of the trial, the trial judge entered an order enjoining defendants from operating their businesses at their present locations in violation of the Cook County Zoning Ordinance. The defendants appealed, and the appellate court reversed (150 Ill. App. 3d 6). We granted the plaintiffs' petition for leave to appeal (107 Ill. 2d R. 315).

Plaintiffs filed suit in March 1983 seeking injunctions prohibiting the defendants from operating their businesses in violation of a 1981 Cook County zoning ordinance that allows specified adult uses to operate only in certain zoned areas (1981 Ordinance Amending Certain Sections of the Cook County Zoning Ordinance of 1976) (1981 Ordinance). After a trial, the trial judge found that the ordinance reasonably regulates and restricts the location of adult uses, and entered an order enjoining the defendants from operating their adult use businesses at their present locations in violation of the ordinance.

The 1981 ordinance follows a 1977 ordinance (An Ordinance Amending the County Zoning Ordinance) (1977 Ordinance), portions of which were held unconstitutional in *County of Cook v. World Wide News Agency* (1981), 98 Ill. App. 3d 1094. The 1981 Ordinance seeks to regulate adult uses in unincorporated Cook County (defined as adult bookstores, adult entertainment cabarets, adult mini motion picture theaters and adult motion picture theaters (Cook County Zoning Ordinance §14.2 (1981))), by establishing them as permitted uses in "all 78 industrially zoned areas of 1—2, 1—3 and 1—4 and as special uses in all the 245 commercially zoned areas of C—3, C—

4, C—6 and C—8" (Cook County Zoning Ordinance §13.16—1 (1981)). Not more than two adult uses are permitted to be established within 1,000 feet of each other in a commercial zone. (Cook County Zoning Ordinance §13.16—1 (1981).) To secure a special use application to operate in a commercial zone requires a public hearing before the zoning board of appeals and a decision by the board of commissioners. (Cook County Zoning Ordinances §§13—17, 13—10 (1981).) The 1,000-foot restriction in commercial zones may be waived if certain requirements are met. Cook County Zoning Ordinance §13.16—2 (1981).

The 1981 Ordinance also provides for the amortization of nonconforming, preexisting adult use establishments. Nonconforming uses are automatically given six months to amortize their businesses, and an additional six months is given to any business which applies for a certificate of nonconformance. (Cook County Zoning Ordinance §§13.16—4—1 through 13.16—4—5 (1981).) Nonconforming uses may apply for an amortization period longer than one year. Cook County Zoning Ordinance §13.16—4—4 (1981).

On appeal from the trial court's order granting the injunction, the appellate court reversed, holding that the 1981 Ordinance unconstitutionally restricted the defendants' first amendment rights. Applying a *de novo* standard of review, which it felt was mandated by *Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 80 L. Ed. 2d 502, 104 S. Ct. 1949, the court stated that the ordinance "significantly impedes public access to adult uses," in violation of *Young v. American Mini Theaters, Inc.* (1976), 427 U.S. 50, 49 L. Ed. 2d 310, 96 S. Ct. 2440. (150 Ill. App. 3d at 15.) The court then held that the ordinance, by permitting adult uses to locate, as of right, only in industrially zoned areas, was unconstitutionally overly broad. The court further stated

that the ordinance failed to satisfy the constitutional requirements for adult use zoning ordinances established in *City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 41, 89 L. Ed. 2d 29, 106 S. Ct. 925. The court held that by relegating adult uses to industrial zones "the county has not left available a reasonable alternative avenue of communication." 150 Ill. App. 3d at 20.

The plaintiffs contend that the 1981 Ordinance provides adequate reasonable alternative channels for communicating sexually explicit materials to the public and satisfies the constitutional standards set forth in *Renton*. The plaintiffs further argue that amortization of nonconforming uses does not unconstitutionally suppress speech nor does it limit the opportunities for sexually oriented businesses to open and operate. They allege that courts have been increasingly willing to sustain amortization clauses independently of first amendment interests and that the present amortization period provides a sufficient and reasonable amount of time for defendants to relocate. The plaintiffs also argue that two provisions in the 1977 Ordinance prohibiting adult uses from locating within 1,000 feet of each other (Cook County Zoning Ordinance §13.16—1 (1977)) or within 1,000 feet of any area zoned for residential use or use by churches (Cook County Zoning Ordinance §13.16—4 (1977)) are not contained in the present ordinance and are now inapplicable due to the earlier appellate court case finding certain provisions of the 1977 Ordinance unconstitutional. *County of Cook v. World Wide News Agency* (1981), 98 Ill. App. 3d 1094.

The defendants contend that the ordinance is unconstitutional, under *Renton*, for failing to provide adult uses with a reasonable opportunity to operate by restricting them to industrial zones and by unconstitutionally reducing public access to first amendment protected communication. The defendants further argue that the

lack of a grandfather clause exempting preexisting non-conforming adult uses unconstitutionally suppresses expression. Moreover, defendants contend, the amortization period permitted adult uses is unreasonably short. The defendants also allege that the 1,000-foot requirements contained in the predecessor 1977 Ordinance remain in force and apply to adult uses located in permitted industrial zones as well as special use commercial zones.

It is uncontested that cities and municipalities may regulate, through their zoning power, the location of sexually explicit businesses. In *Young v. American Mini Theatres, Inc.* (1976), 427 U.S. 50, 49 L. Ed. 2d 310, 96 S. Ct. 2440, the Supreme Court upheld the constitutionality of a Detroit zoning ordinance regulating the location of defined adult theatres by prohibiting them from locating within 1,000 feet of any two other regulated uses or within 500 feet of a residential area. A four-justice plurality found that the ordinance did not violate the first amendment as an impermissible prior restraint, noting that a "city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect." (427 U.S. at 71, 49 L. Ed. 2d at 327, 96 S. Ct. at 2453.) In his concurrence, Justice Powell focused on the interests of the city and the power to zone, noting that "zoning, when used to preserve the character of specific areas of a city, is perhaps 'the most essential function performed by local government.' " (427 U.S. at 80, 49 L. Ed. 2d at 332, 96 S. Ct. at 2457; (Powell, J., concurring), quoting *Village of Belle Terre v. Baraas* (1973), 416 U.S. 1, 13, 39 L. Ed. 2d 797, 807, 94 S. Ct. 1536, 1543 (Marshall, J., dissenting).) Justice Powell analyzed the challenged ordinance under the four-part test of *United States v. O'Brien* (1968), 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673, and found that the ordinance was clearly based on a substantial governmental interest

and implicated "First Amendment concerns only incidentally and to a limited extent." *Young*, 427 U.S. at 73, 49 L. Ed. 2d at 328, 96 S. Ct. at 2454.

In *Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 41, 89 L. Ed. 2d 29, 106 S. Ct. 925, the Supreme Court again upheld the constitutionality of a city's zoning ordinance against a first amendment challenge. The challenged ordinance was designed to concentrate adult uses by prohibiting them from locating within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, park or school. Because the ordinance did not ban adult theaters altogether, the court analyzed the *Renton* ordinance as a form of time, place and manner regulation. Content-neutral "time, place and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." (475 U.S. at 47, 89 L. Ed. 2d at 37, 106 S. Ct. at 928.) The Renton ordinance, the Court stated, was aimed at the secondary effects of adult uses, and not at the content of the films shown, and was clearly based on a substantial interest in preventing crime, protecting retail trade and maintaining property values. The ordinance was also narrowly tailored to "affect only that category of theaters shown to produce the unwanted secondary effects." (475 U.S. at 52, 89 L. Ed. 2d at 41, 106 S. Ct. at 932.) In response to the theater owner's contention in *Renton* that the ordinance did not allow for reasonable alternative avenues of communication, the Court stated that "[i]n our view, the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city." (475 U.S. at 54, 89 L. Ed. 2d at 42, 106 S. Ct. at 932.) Because the ordinance left 520 acres or more than 5% of the entire land area of

Renton available for adult uses, the Court concluded that it fulfilled this requirement.

The plaintiffs contend that the appellate court misapplied the standards announced by the Supreme Court in *Renton*, by finding that the industrially zoned areas in which adult uses are permitted do not provide an adequate alternative channel to operate their businesses.

The defendants argue that the appellate court opinion is consistent with *Renton* because industrial zones do not provide adult uses with a reasonable opportunity to open and operate and dramatically reduce public access to constitutionally protected communication.

Expert witnesses for both the plaintiffs and defendants provided exhaustive findings and research on the suitability and availability of industrial zones for adult uses. The defendants' primary expert witness, a quantitative urban geographer, testified that unincorporated Cook County comprises 190.59 square miles, and that I—2, I—3 and I—4 zoned areas compose 10.8 square miles or 5.7% of the total land areas of unincorporated Cook County. On cross-examination, the defendants' expert admitted that when the Cook County Forest Preserve in unincorporated Cook County is excluded from the total land area measured, the industrial-zoned areas comprise 8.9% of available land.

The appellate court, relying on the defendants' expert witness testimony, found that the industrial zones where adult uses are a permitted use fail to provide those uses a reasonable opportunity to operate. The defense witness visited all the I—2, I—3, and I—4 zoned areas, totaling approximately 78 areas, and concluded that the vast majority were unavailable and unsuitable for operation of an adult use.

One of the plaintiffs' witnesses, a real estate broker and appraiser who also made on-site examinations, testified that a substantial quantity of privately owned indus-

trially zoned land is available for purchase. His testimony concerning the suitability of particular sites within industrially zoned areas often conflicted with the defendants' expert witness; he often found sites labelled as unsuitable or unavailable by the defendants' expert to be suitable, available, or both. He stated further that while sewer and water facilities are necessary for an adult use, they could be adequately accommodated with a private well and septic system, if public sewer and water services were unavailable.

The plaintiffs also offered the expert testimony of an urban economic geographer who conducted a license plate study to measure the market area of adult uses. He concluded that approximately 40% of adult use customers came from greater than 10 miles to patronize these businesses and that the market area encompasses at least a 20-mile radius around the defendant adult use businesses.

We agree with the plaintiffs that the appellate court applied a standard more demanding than that required by *Renton*. In order for a content-neutral zoning ordinance which regulates adult uses by providing where they can and cannot locate to withstand constitutional scrutiny, *Renton* requires that plaintiffs "refrain from effectively denying [defendants] a reasonable opportunity to open and operate an adult theater within the city." (*Renton*, 475 U.S. at 54, 89 L. Ed. 2d at 42, 106 S. Ct. at 932.) We believe that the present ordinance meets this standard.

The defendants argue that *Renton* requires the permissible use locations to be adequate and reasonably able to house the operation of an adult business, and point to *Basiardanes v. City of Galveston* (5th Cir. 1982), 682 F.2d 1203, *Purple Onion, Inc. v. Jackson* (N.D. Ga. 1981), 511 F. Supp. 1207, and *North Street Book Shoppe, Inc. v. Village of Endicott* (N.D.N.Y. 1984), 582 F. Supp.

1428, as support for their contention that the present industrial zones unduly restrict access to constitutionally protected materials in violation of *Young* and *Renton*. They further argue that the ordinance in *Renton* allowed adult uses to locate in some commercial zones as of right without requiring a special use permit. They contend that they cannot operate their businesses on land which contains railroad yards, tank farms and other industrial facilities and that such land is unavailable and that therefore the county has effectively denied the defendants a reasonable opportunity to open and operate an adult business. The defendants argue that industrial zones are ill-suited to the operation of retail or commercial businesses because they must compete with factories and industrial facilities for available space, water and sewer service is inaccessible and would be costly to supply, and access to industrial zones is nonconducive to operating a consumer-oriented, small retail or commercial store.

In *Basiardanes* the Fifth Circuit struck down an ordinance restricting adult uses to the central business district and industrial zones. The court found that 500-foot and 1,000-foot dispersal requirements, also contained in the ordinance, resulted in the exclusion of adult uses from 80% to 90% of the three areas from which they are permitted to locate. Instead of analyzing the ordinance as a time, place or manner regulation, the court reached its result by analyzing the ordinance under *Schad v. Borough of Mount Ephraim* (1981), 452 U.S. 61, 68 L. Ed. 2d 671, 101 S. Ct. 2176. The challenged ordinance in *Schad* banned all live entertainment in Mt. Ephraim. The Court in *Schad* stated that the case, therefore, was not controlled by the time, place or manner analysis of *Young*. (452 U.S. at 71, 68 L. Ed. 2d at 682, 101 S. Ct. at 2184.) The Court found the ordinance unconstitutionally overly broad because it prohibited a wide range of

protected expression while failing to further a sufficiently substantial government interest. (452 U.S. at 72-74, 68 L. Ed. 2d at 682-84, 101 S. Ct. at 2184-85.) The court in *Basiardanes* found that the challenged ordinance in that case virtually banned adult uses from locating in Galveston, prompting the court to strike down the ordinance under *Schad*. (*Basiardanes*, 682 F.2d at 1214-15.) The present ordinance, however, does not have this effect and is properly analyzed under *Renton*'s time, place or manner analysis.

Similarly, in *Purple Onion* the challenged ordinance established the central business district and light and heavy industrial areas as permitted areas for adult use businesses. The court found that the ordinance unconstitutionally restricted access to protected speech because only 10 sites out of 81 were not "wholly unacceptable" for adult uses due to their location. (*Purple Onion*, 511 F. Supp. at 1217.) Unlike the ordinance challenged here, which allows adult uses to locate freely in the permitted industrial zones, all adult uses were further subject to locational requirements within the permitted areas; the ordinance prohibited them from locating within 1,000 feet of another use and 500 feet from a residential or religious area or structure.

In *North Shore Book Shoppe* the city, as a defendant, could locate only two areas in the village, both zoned industrial, in which the plaintiff adult business would be permitted to operate under the ordinance. The court, therefore, found that the ordinance significantly burdened the plaintiff's first amendment rights and impaired public access to protected materials.

All three cases are factually distinguishable from the present cause. The present ordinance establishes approximately 78 industrially zoned areas in which adult uses may locate as a matter of right. These areas are scattered throughout unincorporated Cook County and range

from sizes of several acres to almost 100 acres. Some of the industrially zoned areas are large enough to contain several different sites for adult use businesses. Some areas contain buildings while other areas do not. Although the defendants' expert identified a few areas which were substantially occupied by industrial uses which he considered unsuitable for adult uses, the plaintiff's expert identified numerous areas, which in his opinion were suitable for an adult use. Moreover, the defendants' witness admitted that he considered a specific site or an area unsuitable for an adult use if it were vacant. Under questioning by the plaintiff's attorneys, the defendants' expert witness responded that certain industrially zoned areas would be suitable for adult uses if the land were available. This testimony supports the trial court's view that sufficient land was made available for the location of defendants' businesses.

In *Renton*, the Supreme Court was faced with the same arguments presented here; the adult use business owners in *Renton* argued that some of the land for permitted uses was occupied by existing businesses, that there were no commercially viable adult theater sites available and that practically none of the undeveloped land was currently for sale or lease. The Court rejected those contentions in *Renton*, stating:

> "That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation. \*\*\* [W]e have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices. \*\*\* ('The inquiry for First Amendment purposes is not concerned with economic impact')." *Renton*, 475 U.S. at 54, 89 L. Ed. 2d at 42, 106 S. Ct. at 932, quoting *Young v. American Mini Theaters*

(1976), 427 U.S. 50, 78, 49 L. Ed. 2d 310, 330-31, 96 S. Ct. 2440, 2456 (Powell, J., concurring).

The present ordinance provides approximately 78 industrially zoned areas containing numerous available sites. *Renton* does not require the county to provide the defendants with land tailor-made to conform to the defendants' requirements. We believe that the ordinance provides the defendants with a reasonable number of suitable sites in which to relocate. Even though the defendants may have to expend a certain amount of money to relocate, the defendants "are affected no differently from any other commercial enterprise that suffers economic detriment as a result of land-use regulation. The cases are legion that sustained zoning against claims of serious economic damage. [Citations.]" (*Young*, 427 U.S. at 78, 49 L. Ed. 2d at 330, 96 S. Ct. at 2456 (Powell, J., concurring).) Furthermore, we note that our result is consistent with that of courts considering challenges to similar adult use zoning ordinances after *Renton* (see *S&G News, Inc. v. City of Southgate* (E.D. Mich. 1986), 638 F. Supp. 1060 (upholding constitutionality of ordinance, under *Renton*, establishing commercial districts comprising 2.3% of total land area of county as permitted use area); *Dumas v. City of Dallas* (N.D. Tex. 1986), 648 F. Supp. 1061 (upholding constitutionality of ordinance, under *Renton*, establishing 8% to 10% of total land area of county as permitted use area); *SDJ, Inc. v. City of Houston* (S.D. Tex. 1986), 636 F. Supp. 1359 (upholding constitutionality of ordinance, under *Renton*, by finding that adequate alternative sites existed); *City of Vallejo v. Adult Books* (Cal. App. 1985), 167 Cal. App. 3d 1169, 213 Cal. Rptr. 143 (upholding constitutionality of ordinance, under *Renton*, finding that a reasonable number of available sites existed)). We find, therefore, that the present ordinance provides a reasonable number of alternative sites and does not unconstitutionally sup-

press the defendants' free speech rights or unconstitutionally limit access to protected materials.

The defendants next contend that the ordinance is unconstitutional for failing to contain a grandfather clause exempting preexisting nonconforming uses. They note that most ordinances passed in the wake of *Young* contain grandfather clauses, and further argue that because neither ordinance upheld in *Young* and *Renton* applied to preexisting uses, the ordinance at hand is distinguishable from the analysis applied in those cases and is therefore unconstitutional.

The plaintiffs argue that because the ordinance contains an amortization clause, the lack of a grandfather clause does not render the ordinance unconstitutional. (Cook County Zoning Ordinance §13.16—4 *et seq.* (1981).) The amortization clause allows preexisting adult uses, which became nonconforming uses when the ordinance was passed, six months to relocate, along with a nondiscretionary six-month extension for those adult uses requesting it. Cook County Zoning Ordinance §13.16—4 *et seq.* (1981).

Although the ordinances upheld in *Young* and *Renton* both applied to future adult businesses only, ordinances providing for the amortization of preexisting adult uses, and thus lacking grandfather clauses, have been upheld both prior to and since *Renton*. See *Northend Cinema, Inc. v. City of Seattle* (1978), 90 Wash. 2d 709, 585 P.2d 1153 (upheld ordinance providing a 90-day amortization period for preexisting nonconforming adult theaters); *Hart Book Stores, Inc. v. Edmisten* (4th Cir. 1979), 612 F.2d 821 (upheld ordinance providing a six-month amortization period with a discretionary extension of time, for preexisting nonconforming adult businesses); *Dumas v. City of Dallas* (N.D. Tex. 1986), 648 F. Supp. 1061 (upheld ordinance regulating sexually oriented businesses providing a three-year amortization period for preexist-

ing nonconforming adult uses); *Lydo Enterprises, Inc. v. City of Las Vegas* (9th Cir. 1984), 745 F.2d 1211 (upheld ordinance regulating sexually oriented businesses providing a five-year amortization period for preexisting nonconforming uses); *Castner v. City of Oakland* (1982), 129 Cal. App. 3d 94, 180 Cal. Rptr. 682 (upheld ordinance regulating adult entertainment activity providing a one-year amortization period under which owner can apply for up to a two-year extension); *City of Vallejo v. Adult Books* (1985), 167 Cal. App. 3d 1169, 213 Cal. Rptr. 143 (upheld ordinance regulating adult bookstores and theatres providing a one-year amortization period under which owners could apply for an extra year if they could show extreme hardship).

We do not believe that the lack of a grandfather clause in the present ordinance renders it unconstitutional. The defendants, as owners of adult uses which became preexisting, nonconforming uses when the ordinance was passed in 1981, are given six months to relocate and an additional six months if they apply for a certificate of nonconformance and amortization schedule from the department of building and zoning. (Cook County Zoning Ordinance §§13.16—4—1, 13.16—4—2, 13.16—4—3 (1981).) Additionally, adult uses may seek an amortization period longer than 12 months. (Cook County Zoning Ordinance §13.16—4—4 (1981).) We note from the record that although denied by the zoning board of appeals, only defendant Mannheim Bookstore applied for a longer amortization period.

Defendants allege that the six-month amortization period violates the first amendment because it is unreasonably short. They note that a nonconforming use is a property right of which the owner cannot be unreasonably and arbitrarily deprived. (*City of Des Plaines v. La Salle National Bank* (1976), 44 Ill. App. 3d 815.) They argue that a six-month amortization period is unreason-

ably short because of the first amendment interest involved and attempt to establish such unreasonableness by examining factors they claim other courts rely on in determining the reasonableness of amortization periods. They further contend that the ordinance violates the equal protection clause of the United States Constitution (U.S. Const., amend. XIV) because other nonconforming uses are permitted more time to amortize.

The plaintiffs argue that courts reviewing amortization clauses look to see whether the benefit to the public of requiring amortization is unreasonably disproportionate to any loss to the property owner. (*Village of Oak Park v. Gordon* (1965), 32 Ill. 2d 295.) They contend that the validity of the ordinance's amortization clause should be viewed independently of any first amendment claims. Plaintiffs further argue that because the defendants failed to present any evidence in support of their contention that the amortization period is unreasonably short, the defendants cannot rely upon the factors most courts look to when balancing the public benefit against the property owner's loss. Included in these factors, the plaintiffs contend, are the purchase price of the property, the amount of investment in the property, and the income earned and lost.

Even under the careful scrutiny that the defendants urge we apply in examining amortization clauses terminating preexisting nonconforming adult use businesses (see *Purple Onion, Inc. v. Jackson* (N.D. Ga. 1981), 511 F. Supp. 1207, 1224), we find the present time period to be reasonable. In addition to the initial six months given a nonconforming use to relocate, that time may automatically be extended for another six months through application for a nondiscretionary certificate of nonconformance. (Cook County Zoning Ordinance §§13.16—4—1 through 13.16—4—3 (1981).) Nonconforming uses, therefore, have 12 months to amortize if they choose to follow

the applicable procedures. In *Village of Oak Park v. Gordon* (1965), 32 Ill. 2d 295, we held that amortization ordinances are entitled to a presumption of validity and that "this presumption may be dissipated by a showing that the public welfare does not require the restriction of use and resulting loss to the property owner." (*Oak Park*, 32 Ill. 2d at 296.) Although we found the amortization clause in that case to be unconstitutional for lacking substantial evidence of a public interest in amortizing the defendant's property, we noted that each case "must be judged upon the particular facts of that case with due consideration given to the respective interests of the public and the individual property owners." (*Oak Park*, 32 Ill. 2d at 298.) The defendant in *Oak Park* presented financial evidence of his initial purchase price and additional investment in improvements. The court noted that in the cases cited by the plaintiff city holding amortization plans valid, there was an "express finding that the public interest clearly justified the financial loss to the individual property owner." (*Oak Park*, 32 Ill. 2d at 298.) The factors that the court considered in balancing the defendant's interest against the public's included the defendant's purchase price, investment costs and income loss. (*Oak Park*, 32 Ill. 2d at 297.) Our appellate court has also looked at the cost of complying with an ordinance as a factor to be considered (*Village of Glenview v. Velasquez* (1984), 123 Ill. App. 3d 806, 810). Other courts upholding amortization clauses in ordinances regulating adult uses have also focused primarily on economic considerations. In *SDJ, Inc. v. City of Houston* (S.D. Tex. 1986), 636 F. Supp. 1359, the court upheld an amortization clause providing a six-month period (with a provision allowing for a discretionary extension if a property owner proves he is unable to recoup his investment within six months) for the amortization of plaintiff's sexually oriented business. The court noted that

"recoupment of investment is the major consideration in determining the reasonableness of an amortization provision." *SDJ*, 636 F. Supp. at 1371.

The defendants, citing *Village of Glenview v. Velasquez* (1984), 123 Ill. App. 3d 806, argue that the length of time to amortize in relation to the nature of the use should be considered, noting that the time limit should be based on the nature of the case and commensurate with the investment involved. Because the defendants failed to present any evidence of their purchase costs, improvement costs, loss of income, depreciation, or costs of relocation, they have failed to show why the presumption of validity attached to the amortization clause should be overturned. We note that the trial judge stated:

> "[T]he defendants have not presented any evidence of possible economic loss, either as a result of the relocation because of the application of the ordinance to their use or because of the amortization schedule provided thereon."

We are precluded from balancing the harm to the defendants of relocating within six months against the benefits to the public because of this lack of evidence. The county, on the other hand, as the appellate court realized, has presented more than sufficient evidence detailing the deleterious effects that a concentration of adult uses has upon surrounding commercial and residential areas. (150 Ill. App. 3d at 17.) In a similar case, the Supreme Court of Washington upheld the constitutionality of an ordinance regulating the location of adult motion picture theaters which provides a 90-day amortization provision for preexisting nonconforming uses. (*Northend Cinema, Inc. v. City of Seattle* (1978), 90 Wash. 2d 709, 585 P.2d 1153.) The court found that the theater owners were not rigidly bound to their lease terms and were not required to exhibit adult films. The court noted:

"[T]he court below found appellants had not come forward with any clear evidence of economic harm. The main thrust of their objection, that simply having to move to another location or show a different type of film is substantial economic harm, is unsupported by any clear evidence. The court had a right to conclude that appellants' allegations they will suffer economic harm were speculative at best." *Northend*, 90 Wash. 2d at 721, 585 P.2d at 1160.

In the alternative to their contention that the amortization period is unreasonably short, the defendants argue that the amortization period violates the equal protection clause of the United States Constitution because other uses are permitted more time to amortize. The defendants, however, fail to present any argument or cite any cases showing how their equal protection rights are being violated. Three appellate court cases which are cited, upholding various municipal amortization provisions of varying lengths, concern the reasonableness of such provisions and do not address or contain any analysis concerning the equal protection clause. (*Village of Gurnee v. Miller* (1966), 69 Ill. App. 2d 248; *Village of Skokie v. Walton on Dempster, Inc.* (1983), 119 Ill. App. 3d 299; *Village of Glenview v. Velasquez* (1984), 123 Ill. App. 3d 806.) Our Rule 341 states that "[p]oints not argued are waived." (107 Ill. 2d Rules 341(e)(7), (f).) We therefore decline to address this argument. See *Environmental Protection Agency v. Pollution Control Board* (1986), 115 Ill. 2d 65, 71; *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 483.

The defendants next argue that the 1,000-foot restrictions applicable to adult uses in commercial zones (Cook County Zoning Ordinance §13.16—1 (1981)) are not the only locational restrictions in the ordinance. The defendants contend that provisions of the 1977 Ordinance forbidding more than two adult uses from locating within

1,000 feet of each other (Cook County Zoning Ordinance §13.16–1 (1977)) or any adult use from locating within 1,000 feet of any area zoned for residential use or use by churches (Cook County Zoning Ordinance §13.16–4 (1977)) are still applicable and were not stricken by an earlier court decision (*County of Cook v. World Wide News Agency* (1981), 98 Ill. App. 3d 1094), or repealed by the 1981 Ordinance. The defendants conclude that because the 1977 Ordinance's 1,000-foot locational requirements were not considered by the plaintiffs' expert in considering the suitability of the permitted industrial areas for adult businesses, the expert erroneously found many locations to be suitable by testifying that more than one adult use could locate at several available industrial sites.

The plaintiffs argue that the two 1,000-foot restrictions contained in the 1977 Ordinance fell as a matter of statutory construction after the 1981 *World Wide News* opinion. They contend that the remaining portions of the statute are incapable of being executed independently and therefore fell, by implication, under the *World Wide* holding. They also argue that the adoption of the 1981 adult use amendments was intended to be a comprehensive revision, superceding the 1977 Ordinance.

Cook County sought to regulate sexually oriented businesses in 1977 by passing an ordinance amending certain sections of the Cook County Zoning Ordinance of 1976 to include adult uses. The ordinance provided that such uses must locate in commercially zoned areas, must obtain a special use permit and must conform to the 1,000-foot restrictions previously discussed. In *County of Cook v. World Wide News Agency* (1981), 98 Ill. App. 3d 1094, the appellate court struck down the provisions of the ordinance which required adult uses to obtain special use permits, locate in commercial zones, and obtain a waiver if the use is within 1,000 feet of a residential

area. (98 Ill. App. 3d at 1100.) The court found that "[s]uch a zoning scheme operates as a prior restraint on speech and is therefore unconstitutional." (98 Ill. App. 3d at 1100.) Subsequently, Cook County passed another ordinance amending certain sections of the Cook County Zoning Ordinance in 1981.

We initially note that the fundamental principle of statutory construction is to give effect to the intent of the legislature. *In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 297; *People v. Richardson* (1984), 104 Ill. 2d 8, 15.

We must determine whether the provisions of the 1977 Ordinance amending the Cook County Zoning Ordinance which were stricken by the appellate court in *World Wide News* were severable so as to permit the remaining provisions to stand on their own. The general rule in determining whether an invalid portion of a statute is severable so that the remainder may stand is that "the unconstitutional part does not invalidate the balance if what remains '*** is complete in itself and capable of being executed wholly independently of that which is rejected *** unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated.' " (*George D. Hardin, Inc. v. Village of Mount Prospect* (1983), 99 Ill. 2d 96, 101-02, quoting *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 73.) Applying that rule, we believe that the portions of the statute not invalidated cannot stand by themselves.

The 1977 Ordinance stated that special regulation of adult uses is necessary "to insure that these adverse effects will not contribute to the blighting or downgrading of the surrounding neighborhood ***. The primary control or regulation is for preventing a concentration of these uses in one area." (Cook County Zoning Ordinance §13.16—1 (1977).) Because the appellate court struck

down the provisions requiring adult use operations within 1,000 feet of a residential area to obtain a waiver of 60% of the persons owning, residing, or doing business within that area, adult uses would be free to locate near residential areas as long as there were not two other adult uses within 1,000 feet. This would circumvent the drafter's intentions of preventing the deleterious effects of adult uses (which the ordinance sought to locate solely in commercial zones) from blighting and downgrading the character of residential neighborhoods. We do not believe that the legislation would have been adopted with the invalidated provisions eliminated.

Moreover, an examination of the 1981 Ordinance further supports this view. The following examination of the later ordinance reveals that the 1981 Ordinance sets out a whole new regulatory zoning scheme which completely supercedes the 1977 Ordinance.

Every amendment of a statute is presumed to be made for some purpose, and effect is to be given to the amendment in a manner consistent with that purpose. (*Freeman*, 106 Ill. 2d at 298.) Courts assume that the drafters of an amended statute or ordinance are aware of court decisions interpreting the earlier statute or ordinance. It must be further assumed "that the [drafter's] intention was to overcome the defects in the former law pointed out by [the] court and that it intended by the new act to remedy the defects pointed out in the former law." *People v. Beckman & Co.* (1932), 347 Ill. 92, 95. See 1A A. Sutherland, *Statutory Construction* §22.29 (1973).

Because section 13.16—4 of the 1981 Ordinance, replacing section 13.16—4 of the 1977 Ordinance stricken by the *World Wide* decision, creates amortization provisions applicable to preexisting nonconforming adult uses, it is clear that the drafters are seeking to remedy the defects articulated by the court in *World Wide*. They

have purposely elected not to include a locational requirement pertaining to residential areas in the 1981 Ordinance. The defendants note, however, that because the 1981 Ordinance says that "Article 13 of the Zoning Ordinance is hereby amended by adding the following," the 1,000-foot restriction still applies. Courts, however, "must consider the language of the amended statute in light of the need for the amendment and the purpose which it serves." *People v. Richardson* (1984), 104 Ill. 2d 8, 16; *People v. Alejos* (1983), 97 Ill. 2d 502, 511.

The 1,000-foot restriction prohibiting no more than two adult uses to be established within 1,000 feet of each other is also no longer applicable. (Cook County Zoning Ordinance §13.16—1 (1977).) Although this provision was not stricken by the *World Wide* decision, the 1981 Ordinance sets out a whole new regulatory zoning scheme in section 13.16—1 which establishes industrial zones as permitted uses and commercial zones as special uses for adult businesses. Section 13.16—1 of the 1981 Ordinance also sets out a new locational restriction, prohibiting no more than two adult uses from locating within 1,000 feet of each other in commercial zones.

In *People ex rel. Hines v. Baltimore & Ohio Southwestern R.R. Co.* (1937), 366 Ill. 318, the court construed three amendatory acts which purported to amend a section of "An Act to revise the law in relation to counties" (the Counties Act) (Ill. Rev. Stat. 1935, ch. 34, par. 25). While each of the three amendatory acts purported to amend section 25, none of them expressly repealed any other act or section of an act. Each amendatory act also set forth section 25 as amended in its entirety. In holding that the third, and final act, was the one to be given effect, the court stated:

"It is a general rule that where an act, or section of an act, is amended so as to read as it is repeated in the amendatory act, all such portions of the old act or section

as are not repeated in the new act are repealed with or without any express words for that purpose, but all such portions of the old law as are retained, either literally or substantially, are regarded as a continuation of the old law and not as a new enactment." (*Hines*, 366 Ill. at 322.)

Because we find that the remaining portions of the 1977 Ordinance could not stand alone, and that the 1981 Ordinance contains a comprehensive and new section 13.16—1 (which includes a new zoning scheme establishing industrial zones as permitted uses and commercial zones as special uses, creates a new 1,000-foot restriction applicable only to commercial zones, and creates new amortization provisions), we find that neither of the challenged 1,000-foot provisions remain in effect today.

The defendants next argue that the ordinance is unconstitutional in requiring special use approval for the operation of an adult use in designated commercial zones without proscribing narrow, objective and definite standards for the county board of commissioners to follow in ruling on special use applications.

The plaintiffs contend that requiring a special use permit as a condition for locating an adult use in a commercial zone does not operate as a prior restraint on speech where adult uses can locate freely in industrial zones.

Two provisions of the ordinance are at issue: section 13.16—1, which states that adult uses are established as special uses in all the 245 commercially zoned areas of C—3, C—4, C—6 and C—8; and section 13.17, which states that special use for adult uses "shall be governed by the provisions of subsection 13.10 of this chapter." (Cook County Zoning Ordinance §§13.16—1, 13.17 (1981).) Section 13.17—1 states:

"The Board of Commissioners shall act to accept or reject the report to the Board of Commissioners of the Zoning Board of Appeals of its findings and recommenda-

tions on special use petitions for Adult Regulated Uses within 30 days after said reports are received by the Board of Commissioners." Cook County Zoning Ordinance §13.17—1 (1981).

We agree with the defendants that this provision impermissibly vests county officials with the power to discriminate on the basis of the content of the communication through selective enforcement. We can find no provisions in the ordinance setting standards or guidelines for the board of commissioners to follow in deciding whether to grant or deny special use permits. Moreover, even though adult uses may locate as of right in industrially zoned areas, the Supreme Court has condemned the vesting of totally discretionary power in the hands of officials to grant or deny permits or licenses needed to engage in protected activity. *Shuttlesworth v. Birmingham* (1969), 394 U.S. 147, 151, 22 L. Ed. 2d 162, 167, 89 S. Ct. 935, 938-39.

In *Shuttlesworth* the Court struck down an Alabama ordinance requiring anyone wishing to participate in a parade, public demonstration or procession in Birmingham to obtain a permit to do so. The Court found that the ordinance conferred "virtually unbridled and absolute powers to prohibit any 'parade' *** or 'demonstration' in the city." (394 U.S. at 150, 22 L. Ed. 2d at 167, 89 S. Ct. at 938.) The Court held that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." (394 U.S. at 150-51, 22 L. Ed. 2d at 167, 89 S. Ct. at 938.) Although the ordinance meets the standards set out in *Renton*, the county cannot choose to selectively open commercial zones for adult uses to locate in by vesting total discretion in the board of commissioners to grant or deny special use permits. Such a scheme gives the board the right to discriminate among

adult uses on the basis of content and any other selective and subjective factors it deems relevant. Such authority violates the defendants' first amendment rights. See also *Zebulon Enterprises, Inc. v. County of Du Page* (1986), 146 Ill. App. 3d 515, 522; *Entertainment Concepts, Inc. III v. Maciejewski* (7th Cir. 1980), 631 F.2d 497; *Little v. City of Greenfield* (E.D. Wis. 1983), 575 F. Supp. 656.

Although we find this provision of the ordinance unconstitutional, we believe that it is severable from the remaining provisions of the ordinance. As noted earlier, the unconstitutional part of a statute or ordinance does not invalidate the remaining portion of the ordinance, providing the portion that remains is complete and capable of being executed wholly independently of that which is rejected, unless the drafters would not have passed the ordinance with the invalid portion eliminated. (*George D. Hardin, Inc. v. Village of Mount Prospect* (1983), 99 Ill. 2d 96, 101-02; *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 73.) Because we earlier held that the provisions of the ordinance establishing adult uses as permitted uses in industrial areas satisfied the *Renton* standards, the present provision allowing adult uses to apply for a special use permit to locate in commercial zones is not required to sustain the ordinance under *Renton*. Severing it from the rest of the ordinance, therefore, does not affect the constitutionality of the remainder of the ordinance, which can stand on its own. Likewise, because the county did not have to allocate additional space in commercial zones, the county's intent in passing the ordinance, to curb the effects of adult uses, is still served by the remainder of the ordinance. We do not believe that the county, if unable to allow adult uses to locate in commercially zoned areas, would have refrained from passing the ordinance to regulate such uses by permitting them to locate in industri-

ally zoned areas. Section 13.17—1 of the 1981 Ordinance, therefore, allowing the board of commissioners to grant or deny special use permits in its discretion is held unconstitutional and severed from the ordinance.

The plaintiffs finally contend that the appellate court erred in applying a *de novo* standard of review which it believed was required by *Bose Corp. v. Consumers Union* (1984), 466 U.S. 485, 80 L. Ed. 2d 502, 104 S. Ct. 1949. The plaintiffs contend that *Bose* does not mandate independent review of first amendment issues involving time, place and manner regulations. Like the Supreme Court in *Renton,* we need not address this issue since we find that under any standard of review the circuit court's findings should not have been disturbed. *Renton,* 475 U.S. at 53 n.3, 89 L. Ed. 2d at 42 n.3, 106 S. Ct. at 932-33 n.3.

Accordingly, the judgment of the appellate court is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*